# INLAND AND SEABOARD COASTING COMPANY *v.* TOLSON.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 229. Argued March 19, 1891. — Decided April 6, 1891.

In an action by a wharfinger against a steamboat company for crushing his foot between the timbers of a wharf by the violent striking of a steamboat against the wharf, while touching there to receive freight from him, in calm weather, there was conflicting testimony from the plaintiff and from those on board the steamboat as to the negligence of either party, including evidence that the plaintiff, immediately after the injury, and again the next morning, admitted that he was hurt by his own fault. *Held,* that the defendant had no ground of exception to the following instructions :

(1) That the shock and pain might render the plaintiff incapable of telling exactly how the thing took place, and that his making different statements at different times did not necessarily imply an intention to mislead, and therefore the jury might look at any difference in his statements in that point of view.

(2) That it would be *prima facie* evidence of the defendant's negligence, if the steamboat was thrown with such force against a wharf properly built as to tear up some of the planks ; or if it was dangerous to make a stern landing, with neither captain nor pilot in the pilot-house, and under the other circumstances proved.

(3) That any negligence of the plaintiff, directly contributing to the injury, would incapacitate him from recovering ; and that if he negligently placed his foot between timbers of the wharf, and allowed it to remain there while the steamboat was departing, and it was injured while so placed, it was for the jury to decide whether there was such negligence as would disentitle him from recovering.

(4) That the burden of proof was on the defendant to show that the plaintiff was negligent and that his negligence contributed to the injury.

(5) That contributory negligence of the plaintiff would not prevent him from recovering, if the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence.

Whether a particular position on a wharf is a safe place for the wharfinger to stand, while a steamboat is approaching to take off freight or to make a landing, is a question for the jury, and not for opinions of witnesses.

THE case is stated in the opinion.

*Mr. Walter D. Davidge* and *Mr. Nathaniel Wilson* for plaintiffs in error.

*Mr. C. C. Cole* and *Mr. A. A. Birney* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action brought March 11, 1884, by Tolson against the Inland and Seaboard Coasting Company to recover damages for the crushing of his foot by the negligent management of a steamboat of the defendant. The plaintiff recovered a verdict for $8000, judgment on which was affirmed in general term. 6 Mackey, 39. The defendant sued out this writ of error.

At the trial it appeared that the plaintiff was the owner and wharfinger of a wharf in the Potomac River, known as Shamrock pier, built on piles, in a suitable and substantial manner, early in 1883, and the front of which, twelve feet long, was parallel with the channel of the river, and had three heavy fender piles at each corner; that on September 15, 1883, the plaintiff, having a small basket of pears and an empty demijohn to put on board the defendant's steamboat for Washington, neglected to signal her as she came up the river, and hailed her as she was passing the wharf, whereupon she backed in to make a stern landing, and struck the piles at the lower end of the wharf with considerable force; that at that time the weather was calm and the tide just turned flood, and neither the captain nor the pilot was in the pilot-house.

The plaintiff testified that, while he was standing near the edge of the wharf by the capstan post, ready to catch a line to be thrown from the steamboat, she struck the wharf with such force as to start and break the plank flooring, and to catch and crush his left foot between the planks and that post; and that at that moment the mate of the steamboat reached over and took the basket from his hand.

The defendant called as witnesses the pilot and others on

board the steamboat, who testified that the plaintiff, as the steamboat neared the wharf, called out that there was no need to throw a line, and leaned over and handed the basket and demijohn to the mate, and the mate gave the signal to go ahead, and he and the plaintiff shook hands and joked together, and the boat then struck the wharf, and jammed the plaintiff's foot between the wharf and one of the fender piles; that the boat was then turned about and made a bow landing at the wharf for the purpose of rendering the plaintiff assistance, and the plaintiff was taken ashore, and then and there, in the presence of the mate and others, said "that he was hurt by his own fault, that he was standing in a danger-ous position." The defendant also introduced evidence that the plaintiff, the next morning, at his own house, explained to two of his neighbors how the accident happened, and said to them " that it was his own fault and nobody else's, that he did not blame any of the boat people," and stated the circumstances of the accident in the same way as the defend-ant's witnesses.

Upon the comparative weight to be given to the statements made by the plaintiff shortly after the injury, and to his tes-timony at the trial, the judge instructed the jury as follows: " It may, at first, seem surprising that a man who himself wears the shoe should not be able to tell where it pinches; that a man who has his foot crushed should not necessarily know better than any other party where it was hurt, and how it was hurt; and yet it is not an uncommon thing for other men who saw the thing done, to be able to tell better than the man himself how the accident happened. The shock and pain may have the effect of rendering the man quite in-capable of telling just exactly how the thing took place, so if you find the man at different times making somewhat differ-ent statements it does not at all follow that it was his intention to mislead. You are, therefore, to look at any difference of statements that he may have made, if you believe he did make different statements, in that point of view. He may not be the best witness as to what did happen to himself or the manner in which the thing may have happened."

The defendant excepted to this instruction, and contended that it invaded the province of the jury to determine the credit to be given to the plaintiff's various and contradictory statements, by directing them to look at the evidence in a particular point of view, and by treating the shock and pain of the injury as affecting not only his statements made the same evening, but also those made to his neighbors the next morning.

But the instruction, fairly construed, after calling the attention of the jury to two distinct considerations, the one, the effect of the shock and pain, (which could not have been understood to apply to statements made after the shock and pain had subsided,) and the other, that the making of different statements at different times did not necessarily imply an intention to mislead, suggested to the jury to look at any difference in the plaintiff's statements in that point of view. This was clearly within the judge's authority and discretion in aiding the jury to perform their duty.

The court gave the following instruction: "If the jury believe from the evidence that the wharf in question was an ordinarily strong and good one, and suitable for the purpose for which it was constructed, and that in making the landing in question the boat was thrown against the wharf with such force as to tear up some of the planks or boards of the flooring, this would be *prima facie* evidence of negligence on the part of the agents of defendant under the circumstances in making such landing, and would justify the jury in so finding, unless upon the whole evidence such *prima facie* evidence is rebutted." The defendant excepted to this instruction.

The court did not, in this or any other instruction, tell the jury that the burden of proof on the issue of the defendant's negligence was shifted upon the defendant. On the contrary, the jury were afterwards expressly instructed: "The plaintiff's whole ground of recovery is that the defendant was guilty of negligence. The burden of proof is on the plaintiff to sustain this allegation." The whole effect of the instruction in question, as applied to the case before the jury, was that if the steamboat, on a calm day and in smooth water, was thrown

with such force against a wharf properly built, as to tear up some of the planks of the flooring, this would be *prima facie* evidence of negligence on the part of the defendant's agents in making the landing, unless upon the whole evidence in the case this *prima facie* evidence was rebutted. As such damage to a wharf is not ordinarily done by a steamboat under control of her officers and carefully managed by them, evidence that such damage was done in this case was *prima facie*, and, if unexplained, sufficient evidence of negligence on their part, and the jury might properly be so instructed. *Stokes* v. *Saltonstall*, 13 Pet. 181 ; *Transportation Co.* v. *Downer*, 11 Wall. 129, 134 ; *Railroad Co.* v. *Pollard*, 22 Wall. 341 ; *Le Barron* v. *East Boston Ferry*, 11 Allen, 312, 317 ; *Feital* v. *Middlesex Railroad*, 109 Mass. 398 ; *Rose* v. *Stephens & Condit Co.*, 11 Fed. Rep. 438.

In the same connection, the jury were instructed as follows: "In determining whether the defendant's agents were guilty of negligence in making the landing in question, it would be proper for the jury to consider with the other facts and circumstances shown in evidence whether, under all the circumstances, it was dangerous to make a rear landing with that boat at that time at the wharf in question, and whether either the pilot or captain should not have been in the pilot-house during the making of said landing, and if they find from all the evidence that it was dangerous to make such landing under such circumstances this will be *prima facie* evidence of negligence on the part of defendant to justify them in so finding, unless such evidence is rebutted by the whole evidence in the cause."

The exception to this instruction is equally unfounded. There can be no doubt that approaching a wharf with a steamboat in such a manner, and with such want of supervision, as to be dangerous, is, of itself, evidence of negligence on the part of those in charge of her.

The court, at the defendant's own request, gave the following instructions to the jury :

"If the jury find from the whole evidence that the injuries described in the plaintiff's declaration were caused by the neg

ligence or carelessness of plaintiff, the plaintiff is not entitled to recover in this action, although they shall further find that in landing at or departing from the pier called Shamrock at the time described in the declaration the defendant's boat was not managed by the defendant's servants with skill and care."

"If from the whole evidence the jury are unable to determine whether the injuries complained of in the plaintiff's declaration were caused by the negligence of plaintiff, or by the negligence of defendant's servants, the verdict of the jury must be for the defendant."

The court also instructed the jury as follows: "If you find the defendant was not guilty of negligence, that ends the case. If you find that the defendant was guilty of negligence, then a second point of inquiry arises, whether the plaintiff was also guilty of negligence and whether his negligence contributed to the injury. If you find that the plaintiff was guilty of negligence, and that such negligence directly contributed to the injury, then it is not important to inquire how far such negligence contributed to it; for if he contributed to it at all, that would incapacitate the plaintiff from recovering."

The defendant requested the court to give this instruction: "If the jury shall find from the whole evidence that, at the time the defendant's boat was landing at the pier Shamrock, the plaintiff negligently or carelessly placed his left foot between the piles of said pier, or between the piles and the flooring of said pier, or between one of the piles in front of said pier and the flooring thereof, and allowed it to remain there while the boat was departing from said pier, and the foot so placed was injured while in that position, then the plaintiff is not entitled to recover in this action."

The defendant also requested the court to give the same instruction modified by omitting the words "negligently or carelessly."

The court declined to do so, and gave the instruction with those words, and added: "This is upon the hypothesis that you shall first find the facts spoken of and then that the plaintiff negligently or carelessly placed his foot in the position referred to. It, however, *still leaves with you the question,*

*if you should find he did place his foot in such position,
whether or not his act in doing that was such negligence as
would disentitle him from recovering.* There is a principle
which you will bear in mind in regard to that. It is this:
That a person in the position of the plaintiff is to keep his
wits about him, to be on the alert so as not to be injured, and
to exercise such vigilance or care as is proportionate to the
hazard of the duty in which he is engaged. For instance, a
man should be more cautious if he is running a dangerous
engine than if he is sitting, as you are now, in a position of
safety and attending to his usual avocation. His care must
be in proportion to the hazard of his engagement. *There is
no proof here to show that this was a dangerous vocation* —
standing there attending to that wharf — and yet, neverthe-
less, there were certain hazards accompanying it, just as there
are in almost all positions."

To the refusal to give the modified instruction requested,
and to so much of the instructions as is above printed in italics,
the defendant excepted.

The court rightly refused to omit the words "negligently
or carelessly," as requested, because to do so would be to
assume that the plaintiff's placing his foot between timbers of
the wharf and keeping it there while the steamboat was leav-
ing was necessarily negligence, as matter of law. The court
truly said there was no proof in the case that "standing there,
attending to that wharf, was a dangerous vocation;" and
properly submitted to the jury upon the whole evidence the
question whether the plaintiff exercised due care at the time
and place of the injury, and under the circumstances attending
it. The phrase, "such negligence as would disentitle him
from recovering," was evidently used as synonymous with
"such negligence as contributed to the injury."

Only two other instructions given by the judge and ex-
cepted to by the defendant require to be particularly noticed.

The one, "The burden of proof is, however, upon the defend-
ant to show that the plaintiff was negligent, and that his
negligence contributed to the injury," was in accord with the
uniform course of decision in this court. *Railroad Co.* v.

*Gladmon,* 15 Wall. 401; *Indianapolis & St. Louis Railroad* v. *Horst,* 93 U. S. 291; *Hough* v. *Railway Co.,* 100 U. S. 213; *Northern Pacific Railroad* v. *Mares,* 123 U. S. 710, 720, 721.

The other instruction was in these words: "There is another qualification of this rule of negligence, which it is proper I should mention. Although the rule is that, even if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident; yet the contributory negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence."

The qualification of the general rule, as thus stated, is supported by decisions of high authority, and was applicable to the case on trial. *Radley* v. *London & Northwestern Railway,* 1 App. Cas. 754; *Scott* v. *Dublin & Wicklow Railway,* 11 Irish Com. Law, 377; *Austin* v. *New Jersey Steamboat Co.,* 43 N. Y. 75, 82; *Lucas* v. *Taunton & New Bedford Railroad,* 6 Gray, 64, 72; *Northern Central Railway* v. *Price,* 29 Maryland, 420. See also *Williamson* v. *Barrett,* 13 How. 101, 109.

It was argued that this instruction was inapplicable, because there was no evidence that the defendant knew the peril of the plaintiff, or had either time or opportunity, by the exercise of any degree of care, to guard against it; that if his negligence consisted in standing in a dangerous position too near the edge of the wharf, the defendant was not bound to anticipate his remaining in that position; but that his negligence in fact consisted in placing his foot between the flooring and a fender pile, which the defendant could not have been aware of or guarded against.

It is true that the instruction could not apply, and therefore could not be understood by the jury to apply, to the latter alternative. But upon the question of the plaintiff's position and attitude the evidence was conflicting; and it was

indisputable that the steamboat was approaching the wharf at his call, and for the purpose of receiving freight from his hands, and that her pilot and officers saw him as he waited on the wharf. The jury might well be of opinion that while there was some negligence on his part in standing where and as he did, yet that the officers of the boat knew just where and how he stood, and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence. If such were the facts, the defendant's negligence was the proximate, direct and efficient cause of the injury.

Upon careful consideration of all the instructions given to the jury, we are of opinion that they were applicable to the evidence introduced; that they fully covered the instructions requested; and that they contained nothing of which the defendant has a right to complain.

A single question of evidence remains to be considered. A witness called by the defendant, testified that he had had about twelve years' experience in navigating the Potomac River, as wheelman, first mate, second mate, pilot and captain, but had never been at this wharf. He was asked " if, in his judgment, a position within two or three feet from the fender piles of a wharf constructed like the Shamrock pier was a reasonably safe place for a wharfinger to stand when a boat was approaching in order to take off freight or to make a landing?" Objection was taken to this question by the plaintiff's counsel, and sustained by the court, because the witness had not shown himself to be a wharfinger; and the defendant excepted.

The ground of the exclusion of the question appears to have been that the judge was not satisfied of the qualifications of the witness as an expert upon the subject inquired of. Whether a witness is shown to be qualified to testify to any matter of opinion is always a preliminary question for the judge presiding at the trial, and his decision thereon is conclusive unless clearly erroneous as matter of law. *Spring Co.* v. *Edgar*, 99 U. S. 645; *Stillwell & Bierce Co.* v. *Phelps*, 130 U. S. 520; *Montana Railway* v. *Warren*, 137 U. S. 348. But

in this case, independently of any such consideration, the question whether the place where the plaintiff stood on the wharf was reasonably safe was one of the questions to be determined by the jury, depending on common knowledge and observation, and requiring no special training or experience to decide, and upon which therefore no opinions of witnesses were admissible. *Milwaukee & St. Paul Railway* v. *Kellogg*, 94 U. S. 469; *White* v. *Ballou*, 8 Allen, 408; *Simmons* v. *New Bedford Steamboat Co.*, 97 Mass. 361.

*Judgment affirmed.*