Thomson, J.,
delivered the opinion of the court.
The Denver and Berkley Rapid Transit Company was, on *409 the 25th day of July, 1890, a corporation, owning and operating a line of railway in Arapahoe county, Colorado, and was a common carrier of passengers for hire. • This railway was a street railway, drawn by a steam motor, and at its terminus nearest Denver, connected with a cable line running into the city. On the day named, Michael Dwyer, the plaintiff, was a laborer in the employ of the defendant, working upon its railroad bed and tracks, under the direction and control of a section boss in its service. When its employees were working on its road at a point remote from Denver, it was its custom, at the close of the day’s work, to transport them back to the city on a hand car. On the evening of the day mentioned, when the work had closed, the hand car being absent, plaintiff and his fellow workman were ordered by the section boss to board one of the defendant’s passing trains, but not to mingle with the passengers ; and the cars being somewhat crowded, plaintiff took a seat on the front platform of the motor. This platform was an open space about eighteen inches wide, running across the motor, with an iron guard in front, and the boiler and machinery of the motor behind. Plaintiff took a seat on the right side of the motor, resting his feet on a bar or step perpendicularly under the edge of the platform, with his knees necessarily projecting beyond the edge of the platform, which was on a line with the side of the motor.
At the Denver terminus of the railway there was what is termed a “ Y,” with an automatic switch where the first arm of the “ Y ” left the main track, and another switch thrown by hand where this arm joined the other to make the stem of the “ Y.” Beyond this on the stem was a coal house, and between the last switch and the coal house, on the side occupied by plaintiff, was a perpendicular embankment caused by a cut, and which was so close to the track that in places the motor grazed it as it passed. There was evidence that trains were accustomed to stop between the automatic and the hand switch for the purpose of having the switch thrown, so that they could pass upon the stem of the “ Y,” and that *410 at this place passengers on the train usually left it and others entered it, after which the train passed upon the stem of the “Y,” and then backed up a short distance on the other arm to the regular station of the defendant. Plaintiff boarded the motor on this occasion with the intention of alighting when it reached the stopping place between the switches. As he mounted the motor he spoke to the engineer, saying that he thought this as comfortable a place as he could get, to which the engineer replied that it was. There was evidence that the engineer could plainly see him where he was sitting. There was also evidence that plaintiff and his co-employees, in addition to the order from the section boss, had orders from defendant’s superintendent to ride to and from their work on the train when the hand car was absent. Plaintiff was a laborer and about sixty years of age.
On the evening in question, before the arrival of the train at the stopping place between the switches, the hand switch was thrown by a man stationed there, relieving defendant’s servants on the train from that duty, and rendering it unnecessary for the train to stop for that purpose. There is evidence that occasionally this was done. In the expectation of alighting at this stopping place, plaintiff had arisen from his sitting posture, and was standing on the bar or step with his knees still projecting, his body necessarily somewhat thrown forward on account of the position of the step, and holding on to the iron guard or railing of the platform. The train did not stop, but passed the switch ata considerable rate of speed, and continued until it entered the cut some sixty or seventy feet .further on, and brought plaintiff into violent contact with the embankment, broke his leg and otherwise injured him. At the close of plaintiff’s case, defendant moved the court for a nonsuit on the ground of contributory negligence. The motion was denied.
The question of negligence is a mixed one of law and fact, and where a case is merely one of negligence against negligence, if from the entire evidence it clearly appears that the injured party acted otherwise than as a man of ordinary pru *411 dence would have done in like circumstances, and was guilty of negligence, contributing to the injury, the question becomes one of law and may be determined by the court without submitting it to the jury. But the instances in which this has been done are rare, and to justify a court in thus disposing of the question, the negligence must be clearly defined and palpable.
As the judgment below must be reversed upon other grounds we deem it unnecessary to pass upon the legal effect of the evidence concerning plaintiff’s negligence, or to say, as a matter of law, whether or not his occupancy of the motor platform, with a portion of his person projecting therefrom, or his assuming a standing posture, when the train approached the switch, constituted such negligence.
It is well settled that notwithstanding the plaintiff may be chargeable with negligence, without which he would not have received the injury complained of, yet, if the defendant with knowledge of his exposed situation, did not exercise reasonable care and prudence to avoid the consequences of his negligence, he may nevertheless recover. Whether or not the place between the switches where, as the evidence tends to show, defendant’s trains were accustomed to stop, and passengers to leave, and others enter, was such regular-stopping place that the public and persons riding on the trains had a right to rely upon being able to alight there, was a question exclusively for the jury. But whether such was the fact or not, it was the duty of the engineer in charge of the motor to stop the train before it reached the embankment, if he knew the dangerous position of plaintiff in time to bring the train to a halt, and failing in that the prior negligence, if any, of plaintiff would not excuse him.
In Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 558, the court approved the following instruction given by the court below: “ There is another qualification of this rule of negligence, which it is proper I should mention. Although the rule is that, even if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover, if he him *412 self be shown to have been guilty of contributory negligence which may have had something to do in causing the accident; 3ret the contributory negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff’s negligence.” Concerning this instruction, Mr. Justice Gray, delivering the opinion of the court, says: “ The qualification of the general rule, as thus stated, is supported by decisions of high authority,” citing a number of cases. The principle has been frequently announced, both by English and American courts ; there is, so far as we are aware, no conflict of authority upon the subject ; and if the question had been properly submitted to the jury by the instructions, we would not be disposed to disturb the verdict.
At the instance of plaintiff, the court instructed the jury as follows : “ The jury are instructed that if they believe from the evidence that the plaintiff was on the platform or steps of the engine with the knowledge of the engineer of said train, and that the servants and employees of the defendant company failed to stop said train at the usual stopping place of the train on said road, if you find that there was such usual stopping place, and that the said train was run into said cut and embankment without stopping at said usual stopping place, then the verdict of the jury must be for the plaintiff and against the defendant, unless the jury-should further find from the evidence that after the said train had passed said usual stopping place, and had failed to stop thereat, the plaintiff could, nevertheless, by the exercise of ordinary care and prudence, such as persons usually exercise under similar circumstances, have avoided the accident and placed himself in a safe position. And if you find from the evidence that there was sufficient time and opportunity after said train had passed its usual stopping place, if you find there was a usual stopping place, without stopping there, for the plaintiff to have, in the exercise of ordinary care and *413 caution, avoided the danger, then, in that event, you must find for the defendant and against the plaintiff, unless you ■further find that, notwithstanding the contributory negligence of the plaintiff, the defendant, knowing of the danger, could,' by the exercise of ordinary care and caution, have avoided the injury.” This instruction attempts to fix a liability upon the defendant if its engineer knew that plaintiff was upon the platform of the motor. It puts the case in the alternative, “ the platform, or the steps,” and so makes the engineer’s knowledge that he was upon the platform merely, a constituent part of the negligence charged against the defendant. The testimony is clear that the engineer knew that plaintiff was somewhere on or about the platform, and the instruction being without qualification as to the engineer’s knowledge of his dangerous position there, was certainly misleading. The evidence is that he might have occupied such position on the platform, that he would have been safe from harm, or at least would not have suffered the injury of which he complains. It was not because he was upon the platform, but because a part of his person projected beyond the edge of the platform and the side of the motor, that he came in contact with the embankment and was hurt. The engineer, in order to be chargeable with want of care to avoid the accident, must have known something more than that plaintiff was either on the platform or ón the steps ; he must have known, or his position must have been such that he ought to have known, that plaintiff was so situated that if the train proceeded he was in danger of injury. It is true that the jury are instructed that, notwithstanding the contributory negligence of the plaintiff, he is entitled to a verdict, if the defendant, knowing of the danger, could, by the exercise of ordinary care and caution, have avoided the injury , but the term “ danger ” as used in the instruction is without meaning, unless it consisted in the mere fact of being upon the platform or the steps. The other instructions refer to plaintiff’s danger in a similar general way. Taking these instructions together, their effect is confusing, there is no dis *414 tinetion made between the fact of plaintiff’s occupancy of the platform, and the manner of such occupancy, so that the jury may have concluded that the engineer’s knowledge that he was upon the platform, without more, would, in connection with the other facts proven, authorize their verdict. Whether a state of facts existed which created a liability against the defendant, independently of any contributory negligence of which plaintiff might have been guilty, should have been submitted to the jury definitely and clearly, so that they could have intelligently considered and weighed the evidence bearing upon the question. For the reason that this was not done, the judgment must be reversed.

Reversed.