# CITY & SUBURBAN RAILWAY COMPANY

*v.*

# SVEDBORG.

---

STREET RAILWAYS; PASSENGERS; NEGLIGENCE; BURDEN OF PROOF; PRODUCTION OF STENOGRAPHIC NOTES.

1. The happening of an accident to a passenger while on or getting off a street railway car, which, in the usual and ordinary course of things, would not happen with proper care, casts the burden upon the company, in an action against it by the passenger to recover for injuries so received, of explaining the circumstances of the accident so as to relieve it from liability; which burden, however, is sufficiently discharged by the defendant's showing that the injury complained of was caused by the plaintiff's own negligence or want of care.

2. In such an action where the testimony of the plaintiff was that while her daughter who had alighted from the car was walking

towards the front of the car in the street to procure a basket from the motorman the plaintiff attempted to alight, when the car which had been at rest suddenly started and threw the plaintiff to the ground and she was thus injured, while her daughter gave substantially the same evidence, stating that the car had come to a stop before she alighted and that she alighted before her mother attempted to get off and that it was while her mother was in the act of getting off that the car made a sudden jerk or start, and that just as she was about to take the basket from the motorman she heard her mother scream and turning to look saw the latter thrown down beside the car, it was *held* that the trial court properly refused to direct a verdict for the defendant.

3. An instruction asked by the defendant in such an action is properly refused as calculated to mislead the jury, which is to the effect that the jury cannot find negligence on the part of the conductor, and unless they find that the motorman was negligent they should find for the defendant, and in considering that question they cannot infer the existence of any fact not shown to their satisfaction by the evidence.

4. A statement alleged to have been procured by the claim agent of the defendant from the plaintiff, in such an action, on the morning after the accident while the plaintiff was suffering severe pain from the injury received, to the effect that the car did not start while the plaintiff was getting off and that she did not think the motorman or conductor was guilty of negligence, and exonerating them from all blame, is not conclusive of the fact that the motorman was free from blame in causing the injury, where the plaintiff on the trial testifies that she never intended to exculpate the motorman from blame, but that she told the claim agent that the motorman was to blame for the accident; *following* Railway Co. v. Cruit, *ante,* p. 521.

5. Where, in an action for personal injuries, the defendant seeks to show that the plaintiff, immediately after the injury was received, signed a written statement exonerating the defendant from blame, and such statement was taken down in shorthand by the defendant's agent, the plaintiff, in cross-examining such agent, has the right to probe the witness as to the accuracy of the statement written out from the stenographic notes taken by him, and to call upon the defendant to produce the notes themselves in order to compare them with the written statement.

No. 1210.  Submitted October 23, 1902.  Decided December 2, 1902.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon the

verdict of a jury in an action to recover damages for personal injuries.                                              *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. C. C. Cole* and *Mr. R. B. Behrend* for the appellant:

1. The following authorities show that it was error to submit this case to the jury: *Pleasants* v. *Fant,* 22 Wall. 116; *The Commissioners, etc.* v. *Clark,* 94 U. S. 278; *Randall* v. *The B. & O. RR. Co.,* 109 U. S. 478; *B. & O. RR. Co.* v. *St., use, etc.,* 71 Md. 590; *Duvall* v. *B. & O. RR. Co.,* 73 Md. 513; *P. W. & B. RR. Co.* v. *Burkhardt,* 83 Md. 516; *Patton* v. *Texas & Pac. RR. Co.,* 179 U. S. 658.

2. Where there is some evidence on behalf of the plaintiff which might sustain a verdict if it was uncontradicted, yet where the rebuttal is overwhelming, so that it may be said that taking all the evidence together the verdict would be unsupported by the evidence, it is the duty of the court to direct a verdict. *Met. Ry. Co.* v. *Moore,* 121 U. S. 569; *Powers* v. *N. Y. C. & H. RR. Co.,* 60 Hun, 19, affirmed in 128 N. Y. 659, and authorities therein cited.

*Mr. Andrew A. Lipscomb, Mr. Charles P. Janney,* and *Mr. Philip Walker* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action to recover damages for an injury to the person of the plaintiff, caused by the alleged negligence of the defendant, while the plaintiff, a passenger, was alighting from one of the defendant's street cars in the city of Washington. The injury complained of consisted of the fracture of one of the thigh-bones of the plaintiff, and other injuries and bruises of her body. At the time of the accident the car was bound east on C street, near the intersection of Eleventh street, N. E.

The declaration alleges that the car stopped for the plaintiff to alight at the place just mentioned, and that while she was in the act of alighting the car was suddenly started again before the plaintiff had reached a position of safety upon the ground, by reason of which motion the plaintiff, though using reasonable care, was thereby violently thrown to the ground, and was thereby greatly bruised and injured about the knee, and the muscles of her body were greatly strained and wrenched, and she was greatly bruised and permanently injured about the left hip, and the said hip was permanently fractured, and her left leg was permanently shortened, and she became lame and unable to walk without the aid of a crutch, etc.    To this declaration the defendant pleaded not guilty, and, upon trial, the verdict and judgment were for the plaintiff, and the defendant has appealed.

At the trial, the defendant sought by prayer to have the case taken from the jury, upon the ground that the evidence did not warrant a verdict for the plaintiff.    This effort was based upon the ground of the supposed want of sufficient evidence of negligence on the part of the defendant in producing the injury, and because, as contended, the injury complained of was produced by the negligent act of the plaintiff herself. The court refused to withdraw the case from the jury.

The material facts proved on the part of the plaintiff that relate to the occurrence of the accident, and upon which the court below submitted the case to the jury, are contained in the testimony of the plaintiff herself, and that of her daughter, who was present at the time and place of the accident, and was a witness at the trial for her mother.

The plaintiff in her testimony states, that she is a widow, fifty years old, living on Eleventh street, northeast; that on the evening of the accident she was on her way home from her country place in Virginia, and that her daughter, then fourteen years of age, met her at the depot; that she had brought with her from the country a basket containing eggs and other articles; that she and her daughter boarded the defendant's car at Seventh and G streets going east; that the car, which was a combination car, the closed part being in

front and the open part in the rear, was crowded; that she took a seat in the open part of the car and her daughter in the closed part; that before boarding the car she handed to the motorman thereof her basket; that when the car neared her destination, Eleventh and C streets, northeast, there was only one other passenger, a gentleman, in the car besides herself and daughter; that the car stopped at Eleventh and C streets — on the west side thereof — and her daughter alighted; that while her daughter was walking up towards the front of the car, to procure the basket from the motorman, she attempted to alight, when the car jerked forward and threw her to the ground; that she got up and fell again; that she does not know who picked her up; that the conductor came to her assistance, and the motorman came running through the car; that she was carried from the scene of the accident to her home by friends; that her family physician called that evening and found her in bed, and he administered morphine to relieve the pain; that Mr. Hoover, the defendant's claim agent, called at her house the same evening before the doctor came, but she did not see him; he called the next day, together with Dr. Stone, the defendant's physician, before 10 o'clock; that the accident happened Saturday, December 16, 1899.

On cross-examination she stated, that the car was standing when she arose from her seat to get off; that she kept her seat until the car stopped, and got up as soon as it stopped; that she stepped on the running board and looked towards the motorman to see if he handed the basket to her daughter; that as soon as her daughter reached to get the basket the car gave a jerk and she was thrown on her knees; that she is not positive whether the car started or gave a jerk; that she was on the running board a second when the car started or jerked; that her daughter got off the car at the side before witness, and had gotten up to the motorman before the car started; that she saw the motorman pick up the basket and hand it to her daughter, when she was thrown. She further stated on cross-examination, that Mr. Hoover interviewed her on Sunday morning, and that he took everything down in short-

hand; that she told Hoover how the accident occurred; that he asked her to sign a paper, which she did willingly, because she felt sorry for the conductor; that Mr. Hoover represented to her that otherwise the conductor and motorman would be put off the car; that she thought the motorman was to blame, because she did not hear the conductor give the signal for the car to start, and she always thought the motorman was to blame for not stopping the car properly or for starting the car in handing the basket over; that she told Hoover she thought the motorman, not the conductor, was to blame; that she did not read the paper which she signed by request of Hoover, but he read it to her; that she was so sick she could not read it; that Hoover offered to read it to her and he did so; that she was under the impression that it was to reinstate the motorman and conductor to work; that Hoover wanted her to free the motorman and conductor from blame, but she said she would sign for the conductor, but not for the motorman.    The paper was produced and shown to the plaintiff, and upon her acknowledging her signature thereto, was offered in evidence by the defendant.    By this paper she is made to say:    " When the car was slowing down I stepped on the foot-board of the car and fell to the ground.    The car did not start while I was getting off, and I do not think that the motorman or conductor were guilty of negligence, and I hereby exonerate them from all blame."

The daughter, in her account of the facts attending the occurrence of the accident, gave substantially the same evidence as that given by her mother, according to the statement in the bill of exception.    On cross-examination she is very explicit in stating that the car had come to a stop before she got off, and that she got off before her mother attempted to get off, and that it was while her mother was in the act of getting off that the car made a sudden jerk or start.

The evidence produced on the part of the defendant tended to show that there was no fault or negligence on its part that caused the accident; but that the plaintiff attempted to alight from the car before it had come to a stop and while it was in running motion, and in that way was thrown down from the

running board and injured. To establish this defense several witnesses were examined, all more or less connected with the defendant company. Some of these witnesses contradicted the fact testified to by the plaintiff and her daughter, that the plaintiff did not attempt to alight from the car until it had come to a stop, and that it was by a sudden start or jerk that the plaintiff was thrown from the running board. The conductor and motorman both deny that the daughter preceded the mother in getting off the car, but they all concur in testifying that the latter was thrown or fell from the car and was seriously injured. The daughter in her testimony states, that when she got off the car her mother was just rising from her seat to get off; that after the car stopped, she, the witness, got off and went up towards the front of the car to get the basket from the motorman, and just as she was about to take the basket from the motorman, she heard her mother scream, and turning to look she saw her mother thrown down beside the car. She says, as the motorman let go the lever and took up the basket with both hands to hand it out to her, the car gave a sudden jerk or start, and it was then that her mother was thrown off. This statement is contradicted by the motorman; and which of the two statements is most reliable was a question for the jury alone to decide.

The plaintiff was a passenger on the defendant's car, and, as such, was entitled to the highest degree of care and caution on the part of the carrier for her protection against injury. It is true, to make out a *prima facie* case, the burden of proof of negligence on the part of the defendant, as the cause of the injury, was upon the plaintiff, but this burden is changed, in the case of a passenger, by showing that the accident occurred that caused the injury to the plaintiff, while the latter was a passenger. The burden of proof is then cast upon the defendant to explain the cause of the accident, and to show, if that be the defense, that the plaintiff was negligent and that her negligence caused, or contributed to the production of, the injury. *Inland and Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 557. The happening of an accident to a passenger while on or getting off a vehicle, under the control of the carrier, and which, in the usual and ordinary course of things,

would not happen with proper care, casts the burden upon the defendant of explaining the circumstances of the accident so as to relieve itself from liability. This burden upon the defendant is sufficiently discharged, however, by showing that the injury complained of was caused by the plaintiff's own negligence or want of care. *Dougherty* v. *Mo. RR. Co.,* 81 Mo. 325; *Murphy* v. *St. L. & S. Ry. Co.,* 43 Mo. App. 342; *Murphy* v. *C. I. & B. RR. Co.,* 36 Hun, 199; *Consol. Traction Co.* v. *Thalheimer,* 59 N. J. L. 474. There are many cases to the same effect.

These questions of the burden of proof and the presumptions resulting therefrom, have been very fully and clearly considered by the Supreme Court of the United States in several cases, the last of which being the case of *Gleeson* v. *Va. Midland Railroad Co.,* 140 U. S. 435;— a case taken up from this District. That was a case where the plaintiff occupied the position of a passenger, and was injured by reason of an obstruction on the road, caused by a landslide, and the defense was that the cause of the injury was the act of God, and not that of the defendant. But the defense did not prevail. In the opinion of the court, delivered by Mr. Justice Lamar, it is said: " Since the decisions in *Stokes* v. *Saltonstall,* 13 Pet. 181, and *New Jersey R. & Transp. Co.* v. *Pollard,* 22 Wall. 341, it has been settled law in this court that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance; and was followed at the present term in *Inland and Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551."

In another part of the same opinion, the court said: " The law is that the plaintiff must show negligence in the defendant. This is done *prima facie* by showing, if the plaintiff be a passenger, that the accident occurred. If that accident was in fact the result of causes beyond the defendant's responsibility, or of the act of God, it is still none the less true

that the plaintiff has made out his *prima facie* case. When he proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. They are its matter of defense. And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defense, between the accident and the alleged exonerating circumstances."

In view of these well-settled principles of evidence and the presumptions of facts resulting therefrom, applicable in cases like the present, and the facts shown in proof on the part of the plaintiff, we think the court below was clearly right in refusing the application of the defendant to take the case from the jury. Indeed, the court below, without assuming to itself the right to pass upon the credibility of witnesses, and drawing conclusions of fact from conflicting testimony, could not have done otherwise than submit the case to the jury. The testimony made a case essentially proper for the jury to pass upon and not the court for final determination.

It appears from the bill of exceptions that there were two prayers for instruction granted on the part of the plaintiff and six at the instance of the defendant, but those instructions are not incorporated in the bill of exceptions; but we may well assume that the case was fully and fairly presented to the jury. The last or eighth of the defendant's prayers, which was rejected, was calculated to mislead the jury, and was, therefore, properly refused.* What a judge might or should do on motion for a new trial in a case like the present, is quite a different question, but one with which we have nothing to do.

* The prayer referred to was as follows: "The jury are instructed that under the evidence in this case they cannot find any negligence on the part of the conductor of the car, and unless they shall find from the evidence that the motorman was guilty of negligence which caused the accident to plaintiff, they should find for the defendant, and in considering that question they cannot infer the existence of any fact not shown to their satisfaction by the evidence."— REPORTER.

Nor was the statement procured from the plaintiff by the claim agent, Hoover, on the morning after the accident, whilst the plaintiff was suffering severe pain from the injury that she had received, at all conclusive of the fact that the motorman of the car was without fault or blame in causing her injury. The statement signed by her was written out by the agent of the defendant from his stenographic notes, taken from what he says was the substance of the statement or admissions of the plaintiff made to him, upon questions propounded to her. But she swears that she never intended, by anything that she said to the agent, to exculpate the motorman from blame; but that she told the agent that the motorman was to blame for the accident. A question very similar to the present was presented in the case, already referred to, of *Inland and Seaboard Coasting Co.* v. *Tolson;* and there it was held that the statement or alleged admission made by the plaintiff the day of or the morning after the accident, taking all the blame of the accident upon himself, was to be considered by the jury in connection with the circumstances under which the alleged admission was made. And so we think it was proper to be done in this case, and as was done in the trial below. See case of *Railway Co.* v. *Cruit, ante,* p. 521, decided at the present term of this court.

There is another question presented on an exception taken by the defendant, as to the right of the plaintiff to have produced by the claim agent when the latter was being cross-examined as a witness, the original notes taken by the agent upon the interview or examination of the plaintiff the morning after the accident, and from which the statement given in evidence was written out by the agent. The purpose of requiring such notes was to show that the statement read in evidence did not contain a full and accurate statement as made by the plaintiff at the time; the notes being required for purposes of cross-examination of the witness. The signed statement and the notes had both been referred to by the witness in his testimony, and, upon application to the court, he was required to produce his stenographic notes from which, he says, he wrote out the statement signed by the plaintiff. In thus requiring the notes to be produced for cross-examina-

tion thereon, we think clearly there was no error. It was the right of the plaintiff to probe the witness as to the accuracy of the statement written out from the stenographic notes taken by him, and this could best be done by producing the notes themselves, and comparing them with the signed statement. 1 Greenl. Ev., Secs. 463–467.

There was a question of variance raised in the court below, and an exception taken to the ruling thereon, but there has been no error assigned in respect to such ruling, and we do not understand that the exception is relied upon here. We perceive nothing in the record that could sustain such exception.

Upon the whole, we find no error in the judgment below, and it must, therefore, be affirmed. *Judgment affirmed.*

A writ of error to the Supreme Court of the United States was prayed and allowed.