# CAPITAL TRACTION COMPANY *v.* DIVVER.

STREET RAILROADS; NEGLIGENCE; ORDINARY CARE.

1. A person about to drive a heavily loaded wagon across a street railroad track, and observing that the motorman of an approaching car is slacking its speed at a point about 170 feet distant, has no right to assume that the car will stop there, where it is not a regular stopping place.

2. The plaintiff may recover for an injury caused by the defendant's negligence notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if the defendant's negligence, after the defendant became aware of the plaintiff's danger, was directly responsible for the injury; but, in such a situation, ordinary care is all that is required of the defendant. (Following *Hawley* v. *Columbia R. Co.* 25 App. D. C. 1.)

3. "Ordinary care" and "reasonable prudence" have a relative significance, depending upon the special circumstances of a given case; and consequently what may be deemed ordinary care in one case may, under different conditions presented in another case, be gross negligence; and the determination of such question is almost invariably the province of the jury. (Following *Barstow* v. *Capital Traction Co.* 29 App. D. C. 362.)

4. Where the motorman of a street railway car saw a heavily loaded team about to cross the track at a point from 50 to 75 feet in front of the car, and failed to stop the car, as a result of which a collision occurred and the driver of the team was injured, and the company's evidence in explanation of the motorman's failure to stop the car— which could ordinarily have been stopped by applying the brake, reversing the current, and using the sand pipe, in from 10 to 30 feet— was to the effect that the tracks were wet and slippery, so that the brake would not work properly; that sand could not be used on a curve, and that, if the reverse current should be improperly put on, it would be likely to blow out the fuse and leave the car without current; but it appeared that the tracks were straight for a distance of 68 feet in the direction from which the car was coming, and that the motorman did not reverse the current or sand the tracks after

seeing the team, it was *held*, in an action by the driver of the team against the street railway company, that it was the company's duty to employ a motorman who could properly put on the reverse current, and that the trial court properly refused to direct a verdict for the defendant.

No. 1989.  Submitted March 16, 1909.  Decided May 4, 1909.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for alleged personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a verdict and judgment in the sum of $300 for personal injuries sustained by appellee, H. Divver, plaintiff below, as the result, as he claims, of the negligence of appellant, the Capital Traction Company, defendant below.

On the morning of September 5, 1907, appellee was driving a team composed of two horses and a wagon, heavily loaded with cement, westwardly along M street in this city, and, after he had crossed the north-bound track of the Capital Traction Company at Thomas circle, and was approaching the south-bound track at the northwest portion of the circle, observed a south-bound car at about N street, one block distant from the circle, and approaching the circle.  Appellee thereupon "pulled up and stopped" his team, which was then 3 or 4 feet east of the south-bound track on the westwardly side of the circle.  Noticing that the car had slackened its speed somewhat upon the approach of a man from a house which is just northwest of the circle, and thinking that the car was about to stop, appellee started his team again and drove onto the track.  After he had gotten on the track, the man who was with him shouted that the car was coming, and appellee thereupon whipped up his horses and endeavored to get out of the way of the on-coming car.  He was not successful in this, owing to the heavily-laden condition of his wagon, and the car struck the wagon at about the rear

wheel. The entire team was about 20 feet in length. Appellee was thrown to the ground and quite severely injured. He examined the track after the collision and found no sand on it. It appears that just above Thomas circle there is a curve to the right in the south-bound track; that just below this curve, and extending to the point of the accident, there is a straight piece of track for a distance of about 68 feet; and that, from the point where the appellee observed the motorman slacken the speed of the car, to the point of the accident, was about 169 feet. Expert motormen produced by the appellee testified that, under ordinary circumstances, and with the track in good condition, and on a level street, a car traveling at the rate of 4 miles an hour, the rate which the evidence tended to show this car was traveling, could be stopped by the application of the brake in from 25 to 30 feet; and that, by reversing the current, it could be stopped in from 10 to 15 feet; that, if the track was wet, it was much more difficult to stop the car; and that for tracks in this condition brakes were not of much avail; "but by the use of sand and the reverse, where the track was straight and of level grade, and where the car was going at the rate of 4 miles an hour, it could be stopped in from 25 to 30 feet; that it was more difficult to stop on a down grade; that the point in question, that is, the south-bound track on the north side of Thomas circle, is a slight down grade." On cross-examination one of these witnesses testified that the passage of a street-sprinkling cart over the track would make a very bad condition for stopping with the brake, and that, under such circumstances, with a slight down grade, it might be almost impossible to stop the car with the brake in any reasonable distance; that the use of the reverse current was uncertain, because, when improperly put on, it was likely to blow out the fuse and leave the car without current and "practically helpless;" that sand could not be used on a curve, because, when the car was in the curve, the sand-pipe did not drop the sand on the rail.

The evidence of the defendant tended to show that the point opposite which appellee saw a man approaching the car was not a stopping place; that the motorman seasonably sounded the

gong before the accident; that the car was not going at an excessive rate of speed; and that the motorman put on his brake and endeavored in that way to stop the car; that the car was from 50 to 75 feet from the team when appellee commenced to cross the track; that a street-sprinkling cart had just been along, and that, in consequence, the track was very slippery; that the motorman had had considerable trouble in stopping his car all the way coming down Fourteenth street on account of the slippery condition of the track. The defendant's testimony also tended to show that the accident occurred at the south end of a piece of straight track; that the motorman used only the brake in attempting to stop the car.

The defendant moved the court to instruct the jury that, upon the whole evidence, their verdict must be for the defendant. This instruction was refused, to which refusal an exception was noted. The sole question, therefore, here, is whether the court erred in declining to take the case from the jury.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellant.

*Mr. Leonard J. Mather* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court.

It may be conceded that there is a reciprocal duty resting upon a street railroad and the public in the use of the streets, and that neither may, with impunity, ignore the rights of the other. We shall assume that the appellee, on the occasion of this accident, was guilty of contributory negligence in driving upon the defendant's track in the manner he did. The point where he saw the motorman slacken the speed of the car was not a stopping place, and the appellee had no right to assume that the car would stop there; but it by no means follows, in our view of the evidence, that reasonable minds would concur in the conclusion that the accident was not the direct result of the negligence of the motorman. Since *Davies* v. *Mann,* 10 Mees. &

W. 546, the courts of England and of this country have adopted the rule that the plaintiff may recover for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if the defendant's negligence, after the defendant became aware of the plaintiff's danger, was directly responsible for the injury. In such a situation, however, ordinary care is all that is required of the defendant. *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 35 L. ed. 270, 11 Sup. Ct. Rep. 653; *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408, 36 L. ed. 485, 12 Sup. Ct. Rep. 679; *Hawley* v. *Columbia R. Co.* 25 App. D. C. 1; 29 Cyc. Law & Proc. p. 530, and cases there cited.

The real question, therefore, which confronted the trial court, was whether defendant's motorman *in the peculiar circumstances of this case* exercised ordinary care to prevent the accident after becoming aware of the plaintiff's peril. It would be a waste of time to multiply authorities to the effect that the terms "ordinary care" and "reasonable prudence" have a relative significance, depending upon the special circumstances of a given case, and that consequently what may be deemed ordinary care in one case may, under the different conditions presented in another, be gross negligence. *Grand Trunk R. Co.* v. *Ives, supra; Mobile & O. R. Co.* v. *Wilson,* 22 C. C. A. 101, 46 U. S. App. 214, 76 Fed. 127, 6 Am. & Eng. R. Cas. N. S. 97. As we have remarked in a previous case, the determination of such questions is almost invariably the province of the jury. *Barstow* v. *Capital Traction Co.* 29 App. D. C. 362. We think this case not an exception to the rule. All the witnesses agreed that the company's tracks on Fourteenth street on the morning of the accident and just prior thereto were very slippery. The defendant's own witnesses testified that the motorman had had considerable trouble in stopping his car as he came down Fourteenth street and before he reached the circle. It is undisputed that, when the motorman first saw the plaintiff on the track, the car was from 50 to 75 feet distant, and yet the car was not stopped in time to prevent the accident. The appellant contends that the motorman was under no obligation to

reverse the current, and that it was impracticable or impossible to sand the track, owing to the curve. As to the latter contention, the evidence is undisputed that, for a space of about 68 feet north from the point of the accident, the track is straight. As to the former contention, the condition of the track must be taken into consideration. The evidence of plaintiff's expert motormen to the effect that, under such conditions, "it might be almost impossible to stop the car with the brake in any reasonable distance," was not contradicted, and yet the track was not sanded and neither was the current reversed. These expert witnesses testified in effect that, by the reversal of the current and the use of sand, the car could have been stopped more readily. The only answer to this testimony is the contention, based upon the admission of one of these experts, that, if the reverse current *"was improperly put on,"* it was likely to blow out the fuse and leave the car without current. The obvious answer to this contention is that it is the company's duty to man its cars with motormen who will properly apply this emergency device, and thereby protect the public from peril. No fault was found with the instructions of the learned trial court to the jury, and we must, therefore, assume that the jury found that the defendant's motorman was negligent, and that his negligence was the proximate cause of the injury. In other words, that, owing to the condition of the track at the time of the accident, the use of the brake alone was futile, and did not constitute ordinary care, and that the motorman should have known this. To say that the motorman in the circumstances exercised due care would, we think, invade the province of the jury.

The judgment is affirmed, with costs.                    *Affirmed.*
Vol. XXXIII.—22.