# BALTIMORE & OHIO RAILROAD COMPANY *v.* GRIFFITH.

RAILROADS; NEGLIGENCE; DIRECTION OF VERDICT; ASSIGNMENT OF ERROR.

1. In an action against a railroad company by the owner of a team and wagon struck and injured by one of the defendant's trains at a crossing, even though the driver of the team was guilty of contributory negligence, if the accident could have been avoided by the exercise of reasonable care and prudence on the part of those in charge of the train, the company will be held liable. (Following *Capital Traction Co.* v. *Divver,* 33 App. D. C. 332.)

2. The trial court properly refuses to direct a verdict for the defendant in an action against a railroad company by the owner of a team and wagon driven by an employee, and struck and injured by one of defendant's trains while crossing defendant's tracks at a point in the city guarded by gates, where it appears that a rule of the company required trains to stop before reaching the crossing if the gates were not down, and the testimony is conflicting as to whether they were down; that the driver of the team had been daily crossing the tracks at such point for two years; and that the employees of the company in charge of the train, which was not approaching rapidly, saw the team approaching the track, and where it also appears that if they had had the air brake under control, they could have applied it and

stopped the train within a distance of 50 feet, and also that they were themselves in full view of the driver.

3. Where an assignment of error is based upon the refusal of the trial court to direct a verdict for the defendant, it is proper for this court to search the record and ascertain, from the most favorable view of the evidence, if any reasonable theory exists—whether suggested in the argument or briefs or not—upon which the verdict can be sustained.

No. 2041.   Submitted January 7, 1910.   Decided February 14, 1910.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for negligent injury to personal property.                                    *Affirmed.*

The facts are stated in the opinion.

*Mr. George E. Hamilton, Mr. Michael J. Colbert, Mr. John W. Yerkes,* and *Mr. John J. Hamilton* for the appellant.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton, Mr. Joseph W. Cox,* and *Mr. John A. Kratz, Jr.,* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the judgment of the supreme court of the District of Columbia in an action to recover damages for injuries to personal property. The appellant, the Baltimore & Ohio Railroad Company, defendant in the court below, at the time of the accident in question owned and operated a double track line of railroad running along First street, east, and crossing N street, north, at the intersection of said streets. The company had erected gates at this crossing, which were in charge of a gateman, for the protection of persons traveling along N street, crossing and recrossing the tracks at that point. For convenience the parties will be referred to as plaintiff and defendant, in the relation they sustained in the trial.

It appears that on the day of the accident, an employee of the plaintiff, named Fortune, was driving a team attached to a coal wagon along N street, and, while crossing the railroad tracks, was struck by a train and killed. For the damage sustained

to the team and wagon this suit was brought. In the declaration, the plaintiff, Ward W. Griffith, charges that the injury was caused by the negligence of the defendant company in not having its gates closed at the time plaintiff's employee approached with the team and wagon, and that, by reason of the gates not being down, an invitation was extended to persons on said street to enter in and upon said tracks and cross the same with the assurance that it was safe to do so.

The evidence of the plaintiff, briefly summarized, is to the effect that, when the driver came within a distance of about 40 feet of the crossing, he could have seen a train approaching at a distance of a block away; that, when the team was entering upon the track on which the train was approaching, the train, according to the testimony of one witness, was opposite a switch, which was shown by other evidence to be about 100 feet from the point where the accident occurred, and that, when Fortune drove upon the track, the gate was open. The witnesses introduced on behalf of defendant testified that the gate was closed at the time the team approached the crossing; that the driver was apparently asleep; and that, when the team approached the gate, it turned to one side and passed around the end of the gate on to the tracks, where it was struck by the train.

The train in question consisted of a switch engine and a mail car, which was being shifted in front of the engine, past the crossing, to the depot. The testimony of the witnesses for the plaintiff was to the effect that the train was not moving at a rapid rate. The evidence of the witnesses for the defense fixed the rate of speed at which the train was moving at from 4 to 6 miles an hour.

The sole question presented is whether or not the court below erred in refusing to instruct the jury to return a verdict for the defendant. Upon this one assignment of error the appellant relies for a reversal of the judgment. It was conceded at bar that there was sufficient evidence in the record to justify the court in submitting to the jury the question of defendant's negligence. On this point the jury found against the defendant. Hence, our consideration opens with the negligence of the

defendant established. But it is contended by counsel for defendant that, assuming this fact, the evidence conclusively establishes the contributory negligence of the plaintiff. We find no difficulty in disposing of this contention. Applying the law to the case before us, it is well settled that, even though Fortune was guilty of contributory negligence, if the accident could have been avoided by the exercise of reasonable care and prudence on the part of the defendant company or its agents, it will be held liable. In *Capital Traction Co.* v. *Divver,* 33 App. D. C. 332, it was said by Mr. Justice Robb: "It may be conceded that there is a reciprocal duty resting upon a street railroad and the public in the use of the streets, and that neither may, with impunity, ignore the rights of the other. We shall assume that the appellee, on the occasion of this accident, was guilty of contributory negligence in driving upon the defendant's track in the manner he did. The point where he saw the motorman slacken the speed of the car was not a stopping place, and the appellee had no right to assume that the car would stop there; but it by no means follows, in our view of the evidence, that reasonable minds would concur in the conclusion that the accident was not the direct result of the negligence of the motorman. Since *Davies* v. *Mann,* 10 Mees. & W. 546, 19 Eng. Rul. Cas. 190, the courts of England and of this country have adopted the rule that the plaintiff may recover for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if the defendant's negligence, after the defendant became aware of the plaintiff's danger, was directly responsible for the injury. In such a situation, however, ordinary care is all that is required of the defendant. *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 35 L. ed. 270, 11 Sup. Ct. Rep. 653 ; *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408, 36 L. ed. 485, 12 Sup. Ct. Rep. 679 ; *Hawley* v. *Columbia R. Co.* 25 App. D. C. 1; 29 Cyc. Law & Proc. p. 530, and cases there cited."

Conceding, therefore, that Fortune was guilty of contributory negligence, what are the facts? The evidence of one witness shows that, when the plaintiff's team was stepping upon the

track, the train was approaching at a distance of 100 feet from the crossing. The conductor in charge of the train testified that he was "standing on the front end of the postal car as it was being backed into the station, and controlling the train with the air brake on that car. Brakeman Mitchell was standing on the platform helping me to keep a lookout. * * * I was standing in the doorway, and had been standing there ever since we left the roundhouse, but was more outside than inside. The brakeman was standing beside me, helping me to keep a lookout, as there was nothing else for him to do at that time. I did not step inside the door to work the brake. I was standing in the doorway with my hand on the valve, and operating it without changing my position." This witness also testified that a rule of the company required him to stop the train before reaching the crossing, unless the gates were closed; that, at the rate this train was moving, he could stop it by applying the air brakes within a distance of 50 feet; and that, when he applied the air brake, the train was within 20 or 25 feet of the wagon. True, this witness testified that the gates were closed, but this point has been sufficiently disposed of by other evidence which was properly before the jury.

Now, what were the facts before the jury? The conductor in charge of the train and his brakeman were riding where they could see, and they testified that they did see, the team approach the track, with the air brake under such instant control that the conductor could apply it and stop the train within a distance of 50 feet, and, when the team stepped upon the track, according to one witness at least, the train was 100 feet distant from the crossing. The conductor also testified that a rule of the company required him to stop the train before reaching the crossing, if the gates were not down. Many witnesses testified that the gates were up as the train approached. Assuming this fact to be established, it further appears that Fortune had been crossing this track many times daily for a period of two years. It is fair to assume that he knew of the custom of the company to stop its trains before reaching the crossing, when the gates were not down. With the conductor and brakeman in full view on the

end of the slow-moving approaching train, he may well have believed that the former custom would be followed in this instance. These were all facts for the jury to consider. Assuming, therefore, the contributory negligence of the driver, Fortune, the evidence of defendant's own agent convicts it of failure to exercise the care and prudence required of it to avoid the accident after a collision became imminent and apparent.

This view of the case was not raised in the court below or in the briefs of counsel in this court; but, since the error assigned embraces all the evidence in the case and the propriety of submitting the same to the jury, it is proper to search the record and ascertain, from the most favorable view of the evidence, if any reasonable theory exists upon which the verdict of the jury can be sustained. We think, upon this view of the case, it was proper for the court to submit the case to the jury. My associates are of the opinion that the evidence warranted the submission of the question of contributory negligence to the jury.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*