NEW YORK DOCK CO. v. DELAWARE, L. & W. R. CO.

DELAWARE, L. & W. R. CO. v. NEW YORK DOCK CO.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

Nos. 226, 227.

CONTRACTS ⚷⇒189—CONSTRUCTION—LIABILITY FOR INJURY TO PROPERTY OF THIRD PERSON IN PERFORMANCE.

By a contract by a dock company to transfer cars of a railroad company across New York Harbor on its car floats, it was made absolutely liable for injury to property in transit until its floats should be brought to the float bridges of the railroad company, after which the cars were to be removed by the railroad company. *Held* that, in the absence of any such provision for absolute liability on the part of the railroad company, it could only be held liable for injury to cars and property of another company on a float, occurring while removing its own cars, on the ground of negligence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 811–845, 900–902, 905; Dec. Dig. ⚷⇒189.]

---

⚷⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeals from the District Court of the United States for the Southern District of New York.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Roscoe H. Hupper, both of New York City, of counsel), for appellant.

A. J. McMahon, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.   May 29, 1912, the New York Dock Company loaded on its car float No. 6 14 cars to be delivered at the float bridges of the Delaware, Lackawanna & Western Railroad Company and of the Erie Railroad Company in the harbor of New York.   The float was 240 feet long, 40 feet beam, with three tracks; the middle track being the shortest and connectible with either of the outside tracks by a switch.   There were five cars on the port track, four on the middle, and five on the starboard—the first two on the middle and the first two on the starboard track being destined for the float bridge of the Delaware, Lackawanna & Western Railroad Company, respondent, at Hoboken; the remaining ten to the float bridge of the Erie Railroad Company.   The float arrived at Hoboken when the tide was high, so that the float bridge, being a pontoon, was much higher than the deck of the car float.   From this moment on, under the agreement between the companies, the duty of discharging the cars consigned to the railroad company rested solely on it.

In accordance with the usual practice the railroad company's locomotive, weighing some 80 tons, backed down on the south track of the float bridge, lowering it so that the toggle pins on the port corner of the car float could be inserted in the toggles on the float bridge, then went ahead, switched onto the track on the north side of the float bridge, and came down to the car float so that the toggle pins on the starboard corner of the car float could be inserted into the toggles of the float bridge.   The two toggle pins in the middle of the car float were then made fast in the same way.   Then the servants of the railroad company unbraked its two forward cars on the starboard track of the car float and uncoupled them from the three Erie cars behind them.   The locomotive coupled onto them and pulled them up across the float bridge toward the yard.   The float bridge, as it was relieved of the weight of the locomotive and of the two cars, rose in the water, lifting the bow and depressing the stern of the car float.   All this was in ordinary course and to be expected.   What was not to be expected was that the three Erie cars ran back, the last of them overhanging the stern of the car float, breaking in two, and discharging a large part of its load of bag coffee into the river.

The cause of the accident was unquestionably that these three Erie cars were not braked, and the question was whether this was due to the negligence of the libelant's servants in not braking them when the car float was loaded at its terminal, or of the respondent's in unbraking them when pulling off its cars at its float bridge.   To recover the damages sustained, the Dock Company filed its libel against the Railroad Company, and the Railroad Company a cross-libel against

the Dock Company. Judge Mayer in the District Court found that the neglect was the Dock Company's in loading the cars, and accordingly dismissed the libel of the Dock Company, and directed a decree in favor of the Railroad Company on its cross-libel. We think his conclusion on the testimony was right.

The Dock Company, however, conceding, for the purposes of argument, its negligence in loading the cars on the car float, takes the position that under the contract between it and the Railroad Company the latter was absolutely liable for anything that occurred after the car float arrived at its float bridge. This is founded upon articles 5 and 6, which read as follows:

"Fifth. The responsibility of the Terminal Company for all property to be transported westward shall continue from the time the same is received from the consignor or consignors thereof at its aforesaid premises, until the same loaded into cars shall have been brought to the float bridges of the Railroad Company at Hoboken in readiness to be attached thereto.

"Sixth. The said responsibility of the Terminal Company for the safety of all cars and freight shall be absolute and unqualified, without any exception or exemption whatever, without regard to the cause or occasion of the loss or damage, if any, and without regard to the degree of care or want of care exercised by the Terminal Company."

This agreement applied only to the cars of the Railroad Company, whereas the damage done was to the cars of the Erie Company. Moreover, it imposed no similar drastic liability on the Railroad Company as to its own equipment.

Finally, the Dock Company claims that the District Judge erred, as matter of law, in saying:

"In order that the Dock Company shall prevail, it must be satisfactorily established that one of the employés of the Railroad Company released the brakes on all of the five cars on the north track."

The contention is that the Railroad Company's servants, exercising ordinary care, would have discovered that the Erie cars were unbraked, and could have prevented the accident. It is sought to bring the case within the principle of Davies v. Mann, 10 M. & W. 546, and Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270, that contributory negligence in an action at law will not prevent the plaintiff from recovering, if the defendant by the exercise of ordinary care could have prevented the consequence of the plaintiff's negligence. The theory is that in such case the negligence of the plaintiff did not contribute to the damage. The libelant's negligence was not merely contributory, but primary. Everything that occurred in the behavior of the float itself after it was made fast to the Railroad Company's float bridge was to be expected. The Dock Company was bound to know that the bow of the float would be raised as the Railroad Company's locomotive with its two cars went to the yard, and that the Erie cars, if unbraked, would run astern. On the other hand, the Railroad Company's servants had a right to assume that the Erie cars were properly braked and to act accordingly. If the defect had been perfectly obvious, as in the case of Radley v. Northwestern Ry. Co., 1 App. Cas. 754, the Railroad Company might have been held, not merely for half damages, as is usual in the admiralty,

but solely at fault, because the libelant's negligence would not have contributed to what occurred. But this was not the case. The danger could only have been discovered by inspection.

The decree is affirmed.