## THE GERTRUDE.

(Circuit Court of Appeals, First Circuit. July 29, 1902.)

No. 426.

1. COLLISION—DANGEROUS METHOD OF TOWING—EXTRAORDINARY CARE RE-
QUIRED OF TUG.
   The rule reaffirmed that an ocean tug, which places two tows on a single line covering in all 1,500 feet in length, will be held to the exercise of the extreme care to avoid collisions which such dangerous method of towing renders necessary.

2. SAME—BURDEN OF PROOF TO ESTABLISH FAULT.
   The rule applied that a preponderance of the evidence is necessary to sustain a claim made by one vessel against another in a case of collision.

3. SAME—SCHOONER AND TOW CROSSING.
   Evidence *held* insufficient to sustain the claim of a tug that a schooner was guilty of contributory fault for a collision with a tow, notwithstanding the presumption against the schooner arising from the fact that her deck was not properly manned, and that the testimony of her witnesses was contradictory.

Appeal from the District Court of the United States for the District of Rhode Island.

Samuel Park and Edward S. Dodge, for appellant.
Frank Healy (Archibald C. Matteson, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges.

PUTNAM, Circuit Judge. This is a case of collision, in which the decision of the district court (112 Fed. 448) was against the

¶ 2. See Collision, vol. 10, Cent. Dig. § 275.

steamtug Gertrude, charging her with the entire damages, and she alone has appealed. She does not now raise any question as to her own fault, but she charges that the vessel with which she came in collision, the schooner Lottie, was also guilty. This sufficiently appears by the closing paragraph of the brief of the appellant, to the effect that the decree below should be reversed, and that one should be ordered that the Lottie recover but one-half damages.

The collision occurred about 10 o'clock in the evening of November 27, 1897, at a part of Long Island Sound which is thickly crowded with vessels. The Gertrude is described in her answer as a large and powerful seagoing steamtug, having in tow the barges J. R. Silliman and Busy, there being about 160 fathoms of hawser between the Gertrude and the Silliman, and about 75 fathoms between the Silliman and the Busy; the Silliman thus holding the intermediate position. The schooner was of about 155 tons burden, and was heavily laden with 2,900 barrels of lime. The tug and tow were proceeding easterly at the rate of about five knots. The schooner was proceeding westerly, closehauled, at about seven knots. The evening was fresh, but, with that exception, it was not other than an ordinary November night.

It will be perceived that the tug and her tow covered about 1,500 feet. We have several times urged on the attention of all who might come within range of our opinions the extremely dangerous character of this method of navigation, and the consequent extreme care to which we must hold a tug under these circumstances, although we have no power of prohibition, in the absence of congressional action. This case impresses us anew with the necessity that the courts should hold a firm hand, and, indeed, with the propriety of congressional interference. As the result of the collision, the Silliman was sunk, and all hands on board lost. What was the number of her crew has not been brought to our attention; but it appears that three men constituted the entire crew of the Busy, hardly more than a single watch, and that she had no resources for going to the relief of the Silliman, all of whose crew were drowned before her eyes. The Lottie was sunk with, as we understand, the loss of one life out of a crew of six.

In this case the deck of neither vessel was properly manned at the time of the collision. The tug was absolutely regardless of the rules which were laid down with reference to seagoing steamers in The Oregon, 158 U. S. 186, 193, 15 Sup. Ct. 804, 39 L. Ed. 943, and sequence, and enlarged on by us as applied to a tug and tow of the character at bar in The Samuel Dillaway, 38 C. C. A. 675, 98 Fed. 138, 141, 142. Indeed, so negligent were both vessels in this particular, and also so uncertain and contradictory among themselves were the witnesses in behalf of each, that, in view of what we have said at various places, especially in The Samuel Dillaway, at page 142, 98 Fed., page 675, 38 C. C. A., and in The Columbian, 41 C. C. A. 150, 100 Fed. 991, 997, as to the presumptions against proofs coming from vessels which disregard settled rules as to the proper manning of their decks, it is doubtful whether, if this case were one of new impression before us, we would not refuse to hold that either had

maintained the burden resting on it of proving the other guilty of fault. However, this is not open to us.

In The Columbian, ubi supra, we referred, at page 997, 100 Fed., page 150, 41 C. C. A., somewhat to our views with reference to the extreme rule first laid down in The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84, as to the presumption on the whole case against a vessel confessedly in fault, as the Gertrude was on the record before us. While we have never attempted to apply the rule as there stated, yet we called attention in The Charles L. Jeffrey, 5 C. C. A. 246, 55 Fed. 685, 686, to the proposition that "when one vessel makes a claim against another in the case of a collision admiralty courts are bound by the rule which forbids any other court from condemning any one in damages except in behalf of a party who supports his demand by a preponderance of evidence." The only question we have on this appeal is within the terms of this citation from The Charles L. Jeffrey, in that the issue before us is a claim on the part of the Gertrude against the Lottie, in respect to which claim we are forbidden from condemning the Lottie in damages unless the Gertrude supports it by a preponderance of the case. The learned judge whose decision has been appealed from was of the opinion that there is positive evidence that the Lottie, who was ordinarily bound to keep her course, did execute the only proper maneuver to avoid collision, and executed it promptly. It is not necessary to go to that extent. It may be that, if we undertook to do this, we would be confronted by the presumptions to which we have already referred, arising from the facts that the Lottie's deck was not properly manned, and that the testimony of her own witnesses are contradictory in serious respects as toward each other. However, giving all the weight that should be given to the presumption arising against a vessel on account of her lack in these respects, it is enough for us to say that we are not satisfied, on the whole case, that the Gertrude has sustained the preponderance which rests on her. We might go even further, and hold that the Gertrude put the Lottie in extremis, and therefore apply, as we applied in The Columbian, at page 994, 100 Fed., page 150, 41 C. C. A., the case of The Umbria, 166 U. S. 404, 420, 17 Sup. Ct. 610, 41 L. Ed. 1053, to the effect that, when a heavily laden schooner is shown to have been threatened by a tow like this at bar, "whatever she might have attempted might, for aught that she could foresee, have proved to have been the very thing she ought not to have done." Indeed, the whole line of reasoning in The Columbian with reference to the alleged fault on the part of the schooner Ella M. Doughty, especially so far as it relates to the effect of the facts of the insufficient manning of her deck and of the conflicting nature of her testimony, applies closely to the case at bar.

The decree of the district court is affirmed, with interest, and the costs of appeal are awarded to the appellee.

WEBB, District Judge, sat at the hearing of this cause, but resigned before it was decided.