### SOUTHERN RY. CO. v. CARROLL.

(Circuit Court of Appeals, Fourth Circuit. May 29, 1905.)

No. 582.

1. RAILROADS—CROSSING ACCIDENT—SIGNALS—QUESTION FOR JURY.

Where, in an action for injuries to a traveler at a railroad crossing, the evidence as to whether the railroad company gave statutory signals at the crossing was conflicting, such question was for the jury.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1161, 1162.]

2. SAME—CARE REQUIRED.

A traveler approaching a railroad crossing is bound to give way to a train which is in sight or hearing, and moving so rapidly as to make it doubtful whether he can cross in perfect safety.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1080, 1081.]

**8. SAME—CONTRIBUTORY NEGLIGENCE—STATUTES.**

Where a traveler, knowing of the existence of a railroad crossing, approached it at night, in a carriage with drawn side curtains, without looking or listening for the approach of a train, which was within sight and hearing, and he took no precautions with reference thereto until he was on the track, he was guilty of "willful contributory negligence" precluding a recovery, within a state statute declaring that, if a person is injured by collision with a railroad train at a crossing, and it appears that the railroad neglected·to give statutory signals, which contributed to the injury, it shall be liable for damages, unless the person·injured, in addition to a mere want of ordinary care, was guilty of gross or willful negligence which contributed to .the injury.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1043–1070.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

C. P. Sanders, for plaintiff in error.

Jos. A. McCullough (J. C. Wallace and H. J. Haynsworth, on the briefs), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. John L. Carroll, the plaintiff below, brought this action against the Southern Railway Company, the defendant below, alleging that whilst he was in the act of driving, with his horse and buggy, across the railroad of the defendant, at a public crossing in the suburbs of Union, S. C., on the 2d of April, 1900, at 9 or 10 o'clock at night, the said defendant, by its servants and employés, negligently caused a locomotive drawing a train of cars on its railroad to run against, into, and upon him, the plaintiff, killing his horse, breaking his buggy, and injuring him in person; and in his suit the said plaintiff seeks to recover damages for the alleged injury both to himself and his property. The cause was tried in the Circuit Court for the District of South Carolina, at Charleston, before a jury. A verdict was rendered in favor of the plaintiff, assessing his damages at $900, and judgment accordingly rendered. The case comes to this court by writ of error sued out by the Southern Railway Company, the defendant.

Several exceptions were taken in the course of the trial, and to the charge of the court, all of which appear of record, and assignments of error thereon have been presented by counsel for our consideration. We are of the opinion, however, that, in order to dispose of the case, we need only to pass upon the question as to whether or not the plaintiff, upon his own statement, was entitled to recover. At the close of the testimony the defendant's counsel requested the court to direct a verdict for the defendant, on the ground, in substance, that plaintiff's evidence was not sufficient in law to warrant his recovery. The court declined to give this instruction, to which refusal the defendant's counsel excepted. The plaintiff, John L. Carroll, who was a witness in his own behalf, testified substantially: That in the spring of 1900 he was engaged in grading foundations for the Buffalo Cotton Mills, about three or

three and a half miles from the town of Union, S. C. That during the time he had been engaged in the work, which was three or four weeks, he had been to the town of Union on several occasions, and had crossed the Southern Railway tracks, about the corporate limits of the town, six or eight times. That on the 2d of April, 1900, he came to Union on business, about 4 or 5 o'clock in the afternoon. He traveled in a top buggy, drawn by one horse. He met some friends in Union that afternoon, and went with them to the 7:45 p. m. train, on which they were leaving, to see them off. Some half or three-quarters of an hour later he hitched his horse to the buggy, and started home. The night was very cloudy, the wind was blowing, and the side curtains to the buggy were buttoned down. That he had bought some sardines and crackers, which were on the seat by his side, and he does not remember whether at the time of the accident he was eating them or not. That he was driving along the public road in a "dog trot," when all at once he heard a train, and just as he saw the headlight he discovered that his horse was on the track, and that he did not have time to cross. He undertook to pull his horse to the left, down the track, but before he could do this the engine struck him, killing the horse, knocking the top off the buggy, and otherwise injuring it, and throwing the plaintiff out upon the ground. Upon cross-examination the plaintiff admitted that he knew the railroad was there, about the limits of the town; that he had crossed it several times in the daytime at the same place, where he was attempting to cross that night. He further admitted that he drove steadily along in a "dog trot," as he described it, and did not look or listen to see whether he was approaching the railroad, or whether there was a train nearby; and that his horse was on the railroad track before he saw or heard the train, which was then so closely upon him that he could not escape. It was a fact, undisputed on the trial, that the headlight upon the engine of the train was burning.

The principal point of contention at the trial seems to have been whether or not the engineer complied with the provisions of a South Carolina statute which requires that a bell shall be rung or a whistle sounded upon all moving trains at the distance of at least 500 yards from the place where a railroad crosses any public highway, or street, or travel place, and be kept ringing or whistling until the engine has crossed such highway, or street, or travel place; and a further statute of South Carolina which provides that, if a person is injured in his person or property by collision with the engine or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or willful negligence, or was acting in violation of the law, and that such gross or willful negligence or unlawful act contributed to the injury. There were several wit-

nesses introduced, both by the plaintiff and the defendant, who testified in regard to the ringing of the bell and sounding of the whistle on the train which came in collision with plaintiff's horse and buggy. The witnesses in behalf of the plaintiff principally gave testimony of a negative character upon this point—that is, they stated that they lived in the vicinity, but did not hear the bell or the whistle upon the train—though some of them stated that they heard the roaring of the train when it was half a mile away, and another that she heard the noise of the train at least five minutes before it reached the crossing. On the other hand, the engineer on the train testified directly that he sounded the whistle and rang the bell as required, and his testimony was corroborated affirmatively by other witnesses who were in the vicinity at the time of the accident. But, although it seems to us that the weight of the testimony as to the fact whether or not the proper signals were given was with the defendant, it is not our province, nor was it the right of the judge presiding at the trial, to determine this question; that being a matter for the jury. Assuming that the engineer failed to give the proper signals in approaching the crossing where plaintiff was injured, is the latter entitled to recover? The relative rights of railway companies and of persons traveling on a highway at a point where it crosses a railroad on the same grade are well settled. The traveler is required to give way to any train which is in sight or hearing, and moving so rapidly as to make it doubtful whether he can cross in perfect safety. Both parties are equally bound to use ordinary care to avoid or prevent injury. It is made incumbent upon the engineer approaching a highway crossing to be on the lookout, and to give sufficient signals of the approach of the train by ringing the bell, or sounding the whistle, displaying headlights, or in such other way as may be usual; and statutes which require that bells shall be rung and whistles sounded in approaching a highway crossing have been upheld as reasonable and necessary regulations in the operation of railroads, and the failure to observe them has been held to be negligence. Whilst these duties devolve upon the railroad company, it is a rule of law that a traveler who knows, or who has had reasonable opportunity to know, and ought to know, that he is about to cross the track of a railroad, must look and listen for approaching trains before even attempting to cross the track, and he must begin to look and listen at such distance from the track as to enable him to stop in case he hears an approaching train. Shearman & Redfield on Law of Negligence, vol. 2, § 476. "If the unexplained evidence shows that the injured person could certainly have seen the train in ample time to avoid it if he looked, it is conclusively to be presumed that he did not look, or did not heed, and he is to be held negligent as a matter of law. It is no excuse for failure to look and listen that the traveler did not think just then about the railroad, or its danger, or that his attention was diverted by some trivial matter. Schofield v. Chicago, etc., R. R. Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224. "Nor is it an excuse that the usual or statutory signals of approaching trains were not given."

Shearman & Redfield on Law of Negligence, vol. 2, § 476. And the same authors lay it down that:

"A traveler, driving in a covered carriage, is not thereby excused from looking and listening for trains. It is negligence to approach a crossing without thinking of it, driving fast, with the carriage top up. Instead of being excused from the duty of looking, under such circumstances a traveler is rather bound to the use of greater vigilance because of the obstructions with which he has surrounded himself."

In Railroad Company v. Houston, 95 U. S. 697, 24 L. Ed. 542, it is held that:

"The neglect of the engineer of a locomotive of a railroad train to sound its whistle or to ring its bell on nearing a street crossing does not relieve a traveler on the street from the necessity of taking ordinary precaution for his safety. Before attempting to cross the railroad track, he is bound to use his senses, to listen and to look, in order to avoid any possible accident from an approaching train. If he omits to use them, and walks thoughtlessly upon the track, or if, in using them, he sees the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives any injury, he so far contributes to it as to deprive him of any right to complain. If one chooses, in such a position, to take risks, he must suffer the consequences."

In the opinion of the court in this case the learned judge Mr. Justice Field says:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others."

And the same principle is declared in Schofield v. Chicago, Milwaukee & St. Paul Railway Company, above cited. It seems needless, however, to quote authorities in support of a principle which has been so frequently declared, and so generally accepted as the law; that is, that, although the defendant was negligent, yet if the plaintiff, under the circumstances, by exercising ordinary and reasonable care, could have prevented the accident, the failure to use such care is such contributory negligence as to prevent the plaintiff's recovery. In other words, that the negligence of the plaintiff was the proximate cause of the injury, and but for it the accident would not have occurred.

Now, let us apply these principles to the facts in the present case. There being no evidence to the contrary, we have a right to assume that the plaintiff was in the full possession of his faculties of seeing and hearing. He says that he knew that the railroad was there about the corporate limits of the town; that the road he was traveling crossed it; and yet with this knowledge, on a dark and cloudy night, when the wind was blowing hard, seated in his vehicle with the curtains down, with his luncheon of sardines and crackers

spread upon the seat beside him, he drove heedlessly along in a trot, never stopping, listening, nor even looking, until he was upon the railroad crossing, immediately in front of a moving train. The evidence was uncontradicted, and came from the plaintiff's own witnesses, that those who were listening heard the train coming when half a mile away, and also that the headlight was displayed. It was further in evidence that the situation was such that a train approaching the crossing could be easily seen and heard at a safe distance. Under such conditions, for plaintiff to drive upon the railroad, without taking any precautions whatever, showed a wanton disregard, not only of his own safety, but of the safety of those on board the train which struck him, whose lives he jeopardized by his reckless conduct. He was thus guilty of willful and inexcusable negligence, and even under the statutes of South Carolina is not entitled to recover.

In Grand Trunk Railway Company v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, the Supreme Court holds the law to be that:

"When a given statement of facts is such that reasonable men may differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; but where the facts are such that all reasonable men must draw the same conclusion from them, the question of negligence is one of law for the court."

Upon the undisputed and admitted facts in the case now under consideration, in our opinion there can be but one reasonable conclusion, and that is that the injury to plaintiff and his property was due to his own culpable negligence, and but for it he would not have suffered. We hold, therefore, as a matter of law, that the defendant was entitled to the instruction requested, and that it was the duty of the Circuit Court, upon the uncontroverted facts in the case, to charge the jury that the plaintiff was not entitled to recover, and to direct a verdict for the defendant. The judgment of the Circuit Court is reversed, and the case remanded, to the end that judgment may be rendered for the defendant.

Reversed.