## KLUTT v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Third Circuit. January 4, 1906.)

### No. 29.

1. NEGLIGENCE—RUNNING DOWN OF ROWBOAT—CONTRIBUTORY NEGLIGECNE.

A tug, having a car float on each side and projecting ahead of her, was passing up the Delaware river in the daytime, and when opposite Philadelphia one of the floats ran down a small rowboat being rowed across the river by plaintiff's intestate, and he was drowned. The tug was going at usual speed. She had no lookout on either float, and the pilot's view of the river was obstructed by box cars on the floats. She gave no signal and kept her speed until after the accident. The deceased was accustomed to crossing the river at that point and was a skilled rower. He had nearly passed the further float when he was struck, and there was evidence tending to show that he was caught by floating ice. *Held* that, in view of the circumstances shown, it could not be said as matter of law that the decedent was guilty of contributory negligence, but that the question was one for the jury.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 277–286.]

2. SAME—CARE REQUIRED AS AGAINST NEGLIGENCE OF ANOTHER.

Under the facts so shown the case was one for the application of the rule that the negligence of a person in exposing himself to a danger will not preclude a recovery for an injury, if the defendant, whose negligence

primarily caused the injury, knew the danger of the injured person or should have discovered it, in the exercise of ordinary care, in time to have prevented the injury; and such question should have been submitted to the jury, in view of the clear fault of the tug in failing to maintain a proper lookout at a place where small vessels were likely to be crossing.

Dallas, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 133 Fed. 1003.

Francis Fisher Kane, for plaintiff in error.

John G. Lamb, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. Julia Klutt, the plaintiff in error, in behalf as well of her minor children as herself, brought this action in the court below against the Philadelphia & Reading Railway Company to recover damages for the death of her husband, Andrew Klutt, caused by the alleged negligence of the defendant. The court directed a verdict for the defendant on the ground of contributory negligence of Klutt, and, such verdict having been rendered gave judgment accordingly.

The material facts of the case, extracted from the evidence contained in this record, are as follows: Andrew Klutt worked a farm on Petty's Island, which lies in the Delaware river opposite the city of Philadelphia and near the New Jersey shore. For several years Klutt had been accustomed to take his produce in a rowboat across the river to the Philadelphia side. He was a skillful rower. On the morning of December 23, 1903, about 11 o'clock, Klutt started in his rowboat from Petty's Island to row across the river to Cramp's shipyard in Philadelphia, a distance of about one-half mile. The day was clear. The tide was running down stream, and ice was floating down the river. Klutt was alone in his boat. A tug of the defendant was then proceeding up the river with two floats, carrying box freight cars attached one to each side of the tug. The tug was lashed between the two floats far aft, and hence the freight cars shut out from the view of the pilot most of the river. In his hemmed-in position the pilot could see only that small part of the river directly in front of him and visible through the narrow space between the two lines of the projecting freight cars. There was no lookout on either of the floats. The tug was coming up the river at her usual speed. How far down the river she was when the rowboat started to cross does not appear with certainty. Klutt was rowing steadily, and had reached the middle of the river, and was almost clear of the tug and her floats, when his rowboat was run down by the float on the Philadelphia side and he drowned. A witness at Cramp's, who looked across the river just before the accident, testified: "I saw this man pulling across, but it seems he was caught in the ice." The tug did not blow her whistle, and she neither stopped nor abated her speed until after the disaster occurred.

The learned district judge did not hold the tug to be faultless, but ruled the case wholly upon the assumed contributory negligence of Klutt. Clearly the evidence showed negligence on the part of the tug. She was running in a part of the river frequented by vessels and where small craft such as Klutt's rowboat would naturally be afloat. Yet she was without a lookout, and her pilot was shut off from any adequate view of the river by the cars on the two floats, between which the tug was lashed. Now, where a steamboat navigating a thoroughfare of commerce is without a lookout, and she is involved in a collision, the absence of a lookout must be regarded as prima facie evidence that the collision was the fault of the steamboat. The Genesee Chief, 12 How. 443, 13 L. Ed. 1058. Moreover, the defendant's tug gave no warning whistle and did not slacken her speed. She seems to have taken no precaution whatever to avoid running down Klutt's rowboat. We should here note that the defendant put in no evidence.

Was the court justified in deciding as a matter of law that Klutt was guilty of contributory negligence? We are constrained to answer negatively. Certainly Klutt had a right to row his boat across the river, notwithstanding the approach of an ascending tug and tow. As we have seen, he was an experienced oarsman and was accustomed to row across the river in that locality. The presumption is that on this occasion he exercised reasonable care for his safety commensurate with the circumstances. The facts and the proper deductions to be drawn therefrom were, we think, within the province of the jury. Texas & Pacific Railway Company v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Grand Trunk Railway Company v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 682, 36 L. Ed. 485. In the latter case, the court said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance and cannot be arbitrarily defined. What may be deemed ordinary care in one case may under different surroundings and circumstances be considered gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court."

The rowboat, it is to be observed, was not struck as soon as it came within the course of the advancing tug and tow, but was run down by the float most distant from Klutt, and when he had almost passed safely. In this particular, as in other respects, the case in hand is widely different from the case of Carroll v. Railroad Co., 12 Wkly. Notes Cas. 348, relied on by the court below. Moreover, the rule of Carroll v. Railroad Co., as was said by the Supreme Court of Pennsylvania, speaking by Mr. Justice Mitchell in McNeal v. Railway Co., 131 Pa. 184, 188, 18 Atl. 1026, 1027, "in its nature is applicable only to clear cases." There is little analogy between the present case and the class of railroad cases of which Carroll v. Railroad Co. is a type. A steamboat is not confined to a fixed track like a locomotive and

train, but has complete control of her movements in respect to course and otherwise. In this case it does not appear in the proofs what the precise course of the tug was, or whether she made any change in her course. These things were within the knowledge of those aboard the tug, but none of them testified.

But, even, upon the assumption that Klutt was guilty of negligence in crossing in front of the approaching tug and tow, it does not follow that the defendant is exempt from liability to the plaintiff. It is a settled principle of law that although a plaintiff, who sues for an injury inflicted by the defendant, might by the observance of proper care have avoided exposing himself to the injury, yet this will not prevent him recovering damages from the defendant if the latter discovered, or by the exercise of ordinary care might have discovered, the exposed situation of the plaintiff in time, by the exercise of ordinary care and diligence, to have averted the effect of the plaintiff's negligence and avoided the injury which happened. 1 Thompson on Negligence, §§ 230–232, 239; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270; Baltimore & Ohio R. R. Co. v. Hellenthal, 88 Fed. 116, 31 C. C. A. 414; Turnbull v. New Orleans & C. R. Co., 120 Fed. 783, 57 C. C. A. 151. These decisions show that the above-stated principle is applicable to the case before us. It was for the jury to say whether by the employment of a proper lookout the defendant's tug might not have discovered the exposed situation of Klutt in time, by the exercise of ordinary care and diligence, to have avoided running down his rowboat. The question fairly arose upon the evidence and its determination was for the jury.

The judgment is reversed, and the cause remanded to the Circuit Court, with instructions to grant a new trial.

DALLAS, Circuit Judge (dissenting). I cannot concur in this judgment of reversal. The real question in the case was as to the contributory negligence of Klutt. He was a skilled rower. He was well acquainted with the Delaware river. He had frequently crossed it as he was doing when the collision occurred. He of course perceived the ice upon it and knew the course of the tide. There was nothing to prevent him from seeing the tug and tow (which had the right of way) in ample time to enable him to deliberately regulate his own conduct with reference to them; and he could have avoided the accident by passing astern of them, instead of attempting to cross their bows. If he did not see them in time, it was because he did not use his eyes as he should have done. Negligence of those in charge of the tug (if established) was no excuse for negligence on his part. He was bound to look before putting himself in her path, and not to go carelessly into the place of possible danger. If he omitted to look and proceeded thoughtlessly, he was guilty of culpable negligence, and so far contributed to his death as to deprive his widow and children of any right to complain of others. If he did see the vessels approaching him, and yet undertook to cross in front of them, instead of waiting for them to pass, the consequences of his mistake and

temerity cannot be cast upon the defendant. Judging from the common experience of men, there can be, I think, but one possible solution of the problem how the collision occurred. He did not look, or, if he looked, he did not heed, but took the chance of crossing before the tug and its tow could reach him. In other words, he was clearly guilty of contributory negligence; and I am of opinion that this was so conclusively shown as to leave nothing for the jury, and that therefore the court below was right in directing a verdict for the defendant. Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Schofield v. Chicago & St. Paul Railroad Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224.