SEALEY v. SOUTHERN RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 16, 1907.)

No. 666.

1. NEGLIGENCE—ACTIONS—TRIAL—DIRECTION OF VERDICT.

It is only where the material facts are clearly established, and from such facts all reasonable men would draw the same conclusion, that the question of negligence should be withdrawn from the jury.

2. RAILROADS—ACTION FOR INJURY TO PERSON ON TRACK—QUESTIONS FOR JURY.

Plaintiff started to cross the tracks of defendant railroad company from its passenger station to its freight house at a place commonly used by the public for crossing. From the station platform, and again when he reached the foot of the steps very near the track, he looked up the track in the direction from which a train was past due, and where he had a view for 300 yards, but saw no train. He then, under the most unfavorable view of the evidence for him, walked alongside the track in the opposite direction for 30 feet, without again looking, and stepped upon the track, when he was struck by the train and injured. While so walking his attention was upon a switch engine upon one of the tracks, in front of which he must pass. There was evidence from a large number of witnesses that the train was running at an excessive speed in violation of the state law and of an ordinance, and that it failed to sound the whistle or ring the bell on approaching the station as required by statute, and several who were on the platform testified that they did not see or hear it until it had reached the station. *Held*, that the question of contributory negligence as well as of defendant's negligence was one for the jury, and that the court erred in directing a verdict for defendant.

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

This is an action at law instituted in the court of common pleas for York county, S. C., and subsequently removed to the federal court of that state, to recover of the defendants, the Southern Railway Company and D. G. McAllister, one of its locomotive engineers, damages arising from an injury sustained by the plaintiff, he having been struck by one of the company's trains in charge of the defendant McAllister, at its depot in the town of Rock Hill, S. C., on the 29th day of June, 1903. The facts are briefly that the plaintiff was, and had been for about three years, a shipping clerk of the Rock Hill Buggy Company, whose place of business was located on the western side of the tracks of the defendant company at Rock Hill; that the defendant company's freight depot was on the same side of its tracks, and its passenger, express, and telegraph offices on the eastern side of said tracks; that about 11 o'clock on the morning of the 29th of June, 1903, the plaintiff, having occasion in the line of his employment to consult the defendant company's depot agent relative to securing cars, went first to the freight depot to see him, and, failing to find him there, proceeded in the usual manner of travel across the tracks over to the passenger station to look for him in the ticket office and baggage and express room, and, failing to find the agent, he started back to his place of employment, and while proceeding across the tracks he was struck by the defendant company's train, receiving the serious injuries for which this suit is brought to recover damages.

The defendant company's passenger depot sat back a few feet from the tracks, and had two flights of steps leading from the depot platform to the ground, fronting the tracks, referred to in the evidence as the "southern steps" and the "northern steps," the southern end of the platform being wider than that of the rear portion. The northern steps were something longer than the southern, containing some seven or eight steps, and the bottoms of

the two sets of steps each reached within six or eight feet from the tracks, leaving an open space between the depot and the tracks, and between the steps and the tracks, which, like the spaces between the tracks in front of said depot, were nicely graveled and ballasted, and along, upon, and over which the public habitually traveled, with the full knowledge, if not with the entire acquiescence, of the defendant company, in going from its passenger depot to the said freight depot on the opposite side, in a diagonal direction, or diagonally from the passenger depot to White street, to proceed thereon in a westerly direction. From either the northern or southern steps of the depot, or the space and walk way in front thereof, there was an unobstructed view of the tracks northward for some 250 to 300 yards. On the morning in question the passenger train from the north by which the plaintiff was injured was behind time. The testimony of the plaintiff is that upon leaving the express office to return to his place of business, and as he started down the northern steps, he looked for the delayed train due from the north; that he saw nothing of the same, and proceeded down the steps, and after getting down, and before going on the track, he again looked for the train, looking up the track where he could see some 300 yards, and, not seeing it, started across and down the track, and having proceeded a short distance, possibly some 30 feet, and after having made about two steps on the main line, "there was a flash as though the sun had gone under a cloud," which was the first indication he had of the approaching train, and he wheeled on his left foot and started to move his right, when he was struck by a portion of the engine across the small of his back, and thrown on the pavement. Plaintiff further testified that after looking for the approach of the in-coming train, and as he proceeded across and down the tracks of the defendant company, his attention was devoted to a shifting engine on the tracks on the opposite side, and in front of which he had to pass, and that he did not, after getting on the tracks, further look out for the incoming train.

Plaintiff insisted that he sustained the injury sued for by reason of the negligence of the defendant company in running its delayed train in front of said depot, where plaintiff and others might be expected to be, at a reckless and dangerous rate of speed, without giving any warning or signal of its approach, and because, also, the said train was being operated in violation of the ordinance limiting the speed to 10 miles an hour prescribed by the town of Rock Hill, and in violation of the statute of the state of South Carolina, in that it failed to properly sound its whistle at a distance of 500 yards from where said railroad crossed White street, or said traveled place, and likewise failed, in violation of said statute, to keep its bell ringing until such street and traveled place had been crossed.

The defendants on the other hand claimed that the plaintiff was not entitled to recover, because he carelessly and negligently placed himself suddenly in a position of imminent danger by stepping upon the tracks of the defendant company in front of one of its moving trains at a time it was impossible for the servants and agents of the company to avoid the injury, and that he therefore sustained his injuries by loitering upon the premises of the defendant company, and stepping in front of its moving train without taking proper care and caution for his own protection.

Upon the issues thus joined, a jury was impaneled, and a large number of witnesses examined, some 15 for the plaintiff and 6 for the defendant, at the conclusion of which the lower court, on motion of the defendants, instructed the jury to return a verdict in their favor, which was done, and judgment rendered in favor of said defendants, from which action of the court this writ of error was sued out.

Stanyarne Wilson (Wilson & Wilson, on the brief), for plaintiff in error.

C. P. Sanders, for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

151 F.—47

WADDILL, District Judge (after stating the facts). The first question presented for our determination is whether there was error in the action of the lower court in taking the case from the jury, which has necessitated a careful review of all of the evidence; and after full consideration of the same, and of the questions of law applicable thereto, the conclusion reached is that the court erred in not submitting the case to the jury, to the end that they might pass upon and determine the question of fact whether the plaintiff sustained the injury sued for by reason of his negligently and carelessly entering upon the tracks of the defendant company, or negligently conducting himself while thereon, or from the negligent and careless manner in which the defendant company moved and operated its train of cars upon and over its said tracks, especially when running behind time, and in view of the ordinances of the town and of the state statutes regulating the movement of trains.

Upon some of the material questions necessary to a correct determination of the issues before the jury, there was a sharp conflict in the evidence. The witnesses were mainly eyewitnesses of the occurrence, in full view of all that happened; most of them of unusual intelligence, and each doubtless endeavored to give a correct statement of what he heard and saw, but nevertheless differed widely as to just what took place, and the manner and circumstances of the accident, making it eminently a case calling for the consideration of a jury. The effect of taking the case away from the jury was to hold that as a matter of law the plaintiff was precluded from recovery, because of his failure to properly observe the approaching train before entering upon the tracks of the defendant company, or upon any theory of the case upon which the same was submitted to the jury. It is undoubtedly true that walking upon a railroad track, with the view unobstructed, without first looking for the approach of trains, is such negligence as will usually defeat a recovery; but we do not think that such a result follows necessarily from the plaintiff's movements in this case. The undisputed evidence is that he looked in going down the steps, within a few feet of the track of the defendant company; and that after getting down, again looked for the approach of trains, and, none being in sight, proceeded on his way over the company's tracks to his place of business. The most unfavorable view of the evidence to the plaintiff is that, after he had looked the second time, he walked a distance of 30 feet along the track, then stepped upon it, without at the moment looking back. It is not clear from the evidence that he thus stepped upon the track, or when he did so after looking; but assuming that he did walk the 30 feet after looking, he had only a moment before looked back, where he could see a distance of 300 yards, and he should not therefore be held conclusively disentitled to recover, because of his failure again to look, especially as he was observing the movements of a shifting engine in front of which he had to pass. The case should have been submitted to the jury under such circumstances, to say whether the injury which befell plaintiff arose from his recklessly stepping upon the tracks or negligently conducting himself while thereon, or from the negligent manner in which the defendant company moved its train. A large number of witnesses testified that the train

came into the depot behind time as aforesaid at an unusual rate of speed, from 15 to 16 miles an hour, without emitting steam or making noise, and without ringing its bell or sounding any other signal of its approach; and these witnesses, who were standing upon the platform, or in and about the depot premises, in full view of the train, failed to observe and hear the approach of the train until it had run up to the depot, and was within a few feet of the plaintiff; all of which, together with the circumstance that the plaintiff failed to hear the approaching train until the moment it struck him, were questions properly for the consideration of the jury in determining whose negligence caused the accident.

It is not for us to say, in reviewing the action of the court taking the case from the jury, what conclusion we would have reached from the evidence; but it is our duty to determine whether the facts were or were not such that reasonably minded men might draw different conclusions therefrom as to the negligence of the defendant and the contributing negligence of the plaintiff, or whether there was such conflict in the evidence as to material facts as necessitated the submission of the case to the jury. The lower court was apparently influenced by the decision of this court in the case of R. R. Co. v. Carroll (C. C. A.) 138 Fed. 638. We think a careful review of that case will be found to contain nothing inconsistent with the views herein expressed. The facts there were so unlike those in the present case that it cannot be said to be an authority controlling here. In that case the plaintiff, seated in a covered vehicle with the curtains drawn, and his luncheon of sardines and crackers spread on the seat beside him, on a dark and cloudy night, the wind blowing hard, driving heedlessly along in a trot, never stopped, listened, nor even looked until he reached the railroad crossing, immediately in front of a moving train. That evidence was uncontradicted. Under such conditions, the court in that case well said, for the plaintiff to drive upon the railroad, without taking any precautions whatever, showed a wanton disregard not only of his own safety, but of the safety of those on board the train which struck him, and he was thus guilty of willful and inexcusable negligence, and not entitled to recover.

It is well settled by the decisions of the Supreme Court of the United States and of this court, that cases should not be withdrawn from the jury where, upon a given state of facts, reasonable men might differ as to whether there was negligence or not. Where the facts are such that all reasonable men would draw the same conclusion, then the question of negligence becomes one of law for the court to determine. Grand Trunk Ry. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Southern Ry. Co. v. Carroll (C. C. A.) 138 Fed. 638; Klutt v. Phila. & R. R. R. Co., 142 Fed. 394, 73 C. C. A. 494; Phila. & R. R. R. Co. v. Klutt (C. C. A.) 148 Fed. 818, 820.

It follows that from what has been said that the decision of the lower court should be reversed, and the case remanded to the Circuit Court, with instructions to grant a new trial.