HERR v. ST. LOUIS & S. F. R. CO.

(Circuit Court of Appeals, Fifth Circuit. December 7, 1909.)

No. 1,891.

1. APPEAL AND ERROR (§ 395*)—GROUNDS FOR DISMISSAL OF WRIT OF ERROR—FAILURE TO FILE COST BOND.

Where a petition in error was duly allowed by the trial court, and the proceedings were in all respects regular, except that no cost bond was given, and such a bond, approved by the court below, is tendered in the appellate court, the case will not be dismissed, but the bond will be allowed to be filed to take effect as though given at the beginning of the proceedings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2064–2070, 3127; Dec. Dig. § 395.*]

2. MASTER AND SERVANT (§ 248*)—ACTION FOR DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE—INJURY AVOIDABLE BY PROPER CARE.

In an action against a railroad company under the statute of Mississippi to recover for the death of a freight conductor who was killed by the engine of a following train which ran into his caboose while his train was standing on the main track, the direction of a verdict for de-

fendant on the ground that deceased was chargeable with contributory negligence in stopping his train where he did *held* error, where there was evidence which would have justified a finding that notwithstanding such contributory negligence, if it existed, the engineer of the following train, who, under Const. Miss. 1890, § 193, was not a fellow servant of deceased, by the exercise of reasonable care could have stopped his train and prevented the injury after he was signaled by a flagman and could see the standing train ahead.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 248.*]

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

Action by W. A. Herr, administrator, against the St. Louis & San Francisco Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

James Stone (Smith & Totten, on the brief), for plaintiff in error.

J. W. Buchanan (W. F. Evans and S. W. Jones, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action by W. A. Herr, as the administrator of E. J. Herr, deceased, against the St. Louis & San Francisco Railroad Company, in which the plaintiff claims damages for the negligence of the defendant in causing the death of E. J. Herr. The case was begun in a state court, and was duly removed, on the ground of diverse citizenship, to the circuit court. The defenses presented were a denial of negligence by the defendant, and contributory negligence on the part of the deceased. After all the evidence had been presented, the trial court, on motion of the defendant, directed a verdict for the defendant. On such verdict being returned, judgment was entered for the defendant, and the plaintiff brings the case here, assigning as error the action of the court in directing the verdict.

Before considering the case on its merits, there are two motions to be disposed of.

The petition for writ of error filed in the court below prayed that the writ might be allowed "in forma pauperis." The order granting the writ was made in the usual form, but no bond was given as required by law. After this court acquired jurisdiction of the case and the record was filed and printed, the defendant in error, on February 2, 1909, moved to dismiss the case because the writ was prosecuted "in forma pauperis." The plaintiff in error moved for leave to file a proper bond for costs and presented one approved by the judge who presided in the court below, which was filed in that court February 16, 1909. It appeared that the plaintiff in error had advanced the costs for the printing of the record in this court. The position of the defendant in error is correct, that an appeal or writ of error cannot be prosecuted in this court in forma pauperis. But we hold that, the proceedings in all respects being regular, except the failure to give bond, and such bond being now tendered and in fact approved by the trial judge, the case should not be dismissed. The bond may

be filed now to take effect as if it had been presented at the beginning of the appellate proceedings. It was held, in Brown v. McConnell, 124 U. S. 489, 8 Sup. Ct. 559, 31 L. Ed. 495, that the signing of a citation returnable to the proper term of the Supreme Court, but without acceptance of security, constituted the allowance of an appeal which enabled the court to take jurisdiction, and to afford the appellants an opportunity to furnish the requisite security in the appellate court.

The motion to dismiss is overruled, and the motion to be allowed to file bond for costs is granted.

This being an action for negligence causing death, it is, of course, dependent on a statute, as no action for death lies at common law. The action is authorized generally in Mississippi under circumstances where, if the death of the injured had not ensued, he would have had the right to sue. Code Miss. 1906, § 721. The action is allowed by the husband or wife of the person killed, or by named kindred (Id. § 721); or it may be brought by the "legal or personal representative of the person injured" (Id. § 4056). It will be well to note that the "fellow servant rule" at common law has been so modified in Mississippi that it offers no impediment to the plaintiff's recovery. By constitutional provision it is declared that:

"Every employé of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation or its employés, as are allowed by law to other persons not employés where the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work." Const. Miss. 1890, § 193.

And this provision is extended to the legal or personal representative of the person injured where death ensues from the injury. These constitutional provisions are confirmed by statute. Code Miss. 1906, § 4056.

On the 23d day of September, 1907—the day he was killed—E. J. Herr was a conductor of the defendant railroad company. On that day he was ordered to run a freight train, known as "extra No. 2690," from Holly Springs, Miss., to Memphis, Tenn., having brought his train on that morning from Memphis to Holly Springs as a local freight. At the town of Byhalia, on his trip from Memphis to Holly Springs, he received the following order:

"Engine No. 2690, Herr, will run Extra from Holly Springs to Memphis."

At the same time and place he received the following order:

"No. 256, Engine 736, will run four hours late from Tupelo to Redbanks, and three hours and thirty minutes late Redbanks to Memphis."

At Holly Springs Herr received instructions to unload certain cars of stone at a place one and a quarter miles west of Redbanks, a station eight or nine miles west of Holly Springs and between that place and Memphis. Herr left Holly Springs going northwest with his extra train at 3:25 p. m., and arrived at Redbanks at 3:50 p. m., at

which place he did some unloading and took the siding to allow a train to pass. After a conference with the engineer of his train, it was determined that they would proceed to the place where the stone was to be unloaded. They, accordingly, left Redbanks with their train at 4:17 p. m., and proceeded to the place designated for the unloading of the stone, and there the extra train was stopped to be unloaded; it being understood, as some of the evidence tends to show, that the flagman was to be left at the west end of the switch at Redbanks to protect this extra train against train No. 256. The rules of the company require the flagman when his train is stopped on the main line, to go back immediately and protect the train with a flag. When the extra train stopped, the flagman, Flint, states that the deceased called to him and said, "Kid, we have 25 minutes to unload"; and that he went back to flag and soon heard the approach of train No. 256; that he started on a run up the track towards Redbanks, and had run as far back as 10 telegraph poles when he saw the smoke of train No. 256 as it came out of Redbanks; that he then ran an additional 3 telegraph poles, giving the emergency signal, when he was answered by the engineer of train No. 256; that this made the distance of train No. 256 from the caboose of the extra train, when the engineer of No. 256 answered the emergency signal, 16 telegraph poles, or 3,360 feet, there being 210 feet between each telegraph pole. Train No. 256 was not stopped in time to avoid the collision. It ran into the caboose of the extra train No. 2690, and killed E. J. Herr, who was in the caboose.

Smith, the engineer of train No. 256, although answering the emergency signal of the flagman, Flint, 16 telegraph poles from the point of the accident, did not put on the emergency brake, stating that he supposed that he had the usual time and distance in which to stop, as provided by the rules in cases of being flagged. This witness testified that he knew it was customary for flagmen to flag trains in less distance than required by the rules of the company; that he was on the right side of his engine in the proper place, but did not see the caboose into which he ran until his attention was called to it by a brakeman riding on the tender of his engine when he was only 300 or 400 feet from the caboose; that he was going only about 6 miles an hour when he struck the caboose, having reduced the speed of his train from 30 miles an hour to 6 miles an hour at the time of the accident. He said, that he was prevented from seeing the train in front of him by a curve in the road; that in an emergency he could stop that train going 30 miles an hour in 1,800 feet; that he tried to make the stop in this case when about 1,400 feet from Herr's caboose; that in 400 feet more he could have stopped the train and avoided the accident.

The rules of the company require flagmen to go back from the rear of the train, when stopped on the main line, 21 telegraph poles, and place one torpedo on the rail on the engineer's side. He must continue to go back at least 25 telegraph poles from the rear of the train and place two torpedoes on the rail on the engineer's side 90 feet apart, when he must return to a point 20 telegraph poles from the rear of his train and remain until the approaching train has stopped or he is recalled by the whistle of his engine.

Mason testifies that, according to his theory of the rules, Herr had no right to leave Redbanks with his train under any condition. But there was evidence tending to show that this rule was not without exception and may be violated when it is safe to do so by protecting the train with a flag; that Conductor Herr and Engineer Mee thought it was safe to violate that rule on this occasion; that the rule requiring the flagman to go back 25 telegraph poles is directory, and the employés have discretion as to how far it is necessary for a flagman to go, being governed in each case by the situation of the exposed train, and the flagman has some discretion about hurrying back; and that the conductor is not required to follow the flagman to see that he performs his duty.

W. B. Bradbury testified that he was on the rear of a train that had backed out of the west end of this switch and saw a passenger train which had passed while his train was on the switch, a distance of one mile, going in the direction of the place of the accident, and that from this point he saw a train a half mile beyond the signal board, the point of the accident; that his train was headed east; and that he was looking west from the rear end of the passenger train that he was riding on.

L. J. McCombs testified that he had lived one-half mile west of Redbanks all his life and was perfectly familiar with the railroad at that point and at the place of the accident; that on leaving Redbanks, going northwest, the railroad runs about 15 or 20 rails in a cut; that, after leaving this cut, it is open all the way to where Mr. Herr was killed; that he was killed near a milepost, meaning the station post; that from the northwest end of the cut at Redbanks to the point of the accident it is something over 800 yards; that he could stand at the northwest end of the switch and see a freight train down to its doors passing the place of accident; that he could see this looking west from the mouth of the cut; that if a person was on an engine he could see further; that the place of the accident was an open field; that a person standing at the northwest end of the cut had an unobstructed view of the railway for a mile or a mile and a half; that the switch is a quarter of a mile on section 12, and the railroad runs through sections 11 and 12, and one could see halfway on section 11; that from the west end of the switch to the point of the accident is 92 rails; that standing at the mouth of the cut looking west he could see a man walking over the distance of a mile; that he saw two boys walk that distance while he was standing at the switch west of Redbanks a short time after the accident; that these boys got on the railroad beyond the place of the accident and walked to the switch; that from the northwest end of the switch to the place of the accident is an open field with no obstructions to the sight.

J. E. Crook testified practically to the same state of facts as were testified to by McCombs.

Underwood testified that he rode on an engine from Redbanks to Byhalia over the ground of the accident; that, after going four telegraph poles from Redbanks, he could see 16 telegraph poles, or three-quarters of a mile.

Witness Herr testified that he made observations of trains going east and of trains going west; that he stood in the middle of the cut outside of Redbanks and saw a train coming towards him from the northwest fully 1½ miles; that he could see it all the way coming from the point of the accident to the mouth of the cut; that there are no obstructions to the view along the track, which lays through an open field: that he stood at the place of the accident, and looked east towards Redbanks; and that he saw a train come out at the north end of the cut, and as it came out he could see the engineer sitting in his engine. He estimates the distance to be three-quarters of a mile from the mouth of the cut to the place of the accident.

The statute which is made applicable to both passengers and employés provides that:

"In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury." Code Miss. 1906, § 1985.

It seems clear, in view of the foregoing, that the learned trial court must have directed the verdict for the defendant upon the theory that the deceased, E. J. Herr, was, as matter of law, guilty of contributory negligence which barred a recovery by his administrator. There is much evidence in the record which is referred to as bearing on the question of the contributory negligence of the deceased. As the case must be tried again, we do not deem it advisable to comment on this evidence, involving as it does the conduct of the deceased and his flagman, and the rules of the defendant company, and whether or not they were generally enforced or often disregarded with the company's knowledge and acquiescence. For the purposes of this decision we may assume—a fact that we do not decide—that the evidence was sufficient to justify the court in holding, or the jury in finding, that Herr was negligent in his conduct. Such holding or finding would not, in our opinion, be conclusive of the case. If Smith, the engineer in charge of the engine attached to train No. 256, did see, or could, by the exercise of ordinary or reasonable care, have seen, standing on the track, the caboose in which Herr sat and on which he was killed, far enough before striking it to have avoided the collision by stopping his train, the plaintiff would be entitled to recover, notwithstanding the previous negligence of Herr. The rule seems to be unquestioned that notwithstanding the person injured was guilty of negligence in exposing himself to an injury at the hands of the defendant, yet, if the defendant discovered the exposed situation of the person in time by the exercise of ordinary or reasonable care after so discovering it to have avoided the injury, and nevertheless failed to do so, the contributory negligence of the person injured does not bar a recovery of damages from the defendant. Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 429, 12 Sup. Ct. 679, 36 L. Ed. 485; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; 1 Thompson on Negligence, §§ 237, 238, 239.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.