# THE PLYMOUTH.

(Circuit Court of Appeals, Third Circuit. March 7, 1911.)

### No. 17 (1,386).

1. NEGLIGENCE (§ 83*)—CONTRIBUTORY NEGLIGENCE—INJURY AVOIDABLE NOT-WITHSTANDING.

A plaintiff may recover for an injury caused by the negligence of defendant, even though his own negligence contributed thereto, where defendant, knowing of such negligence, might by the exercise of reasonable care have avoided the consequences of it, and prevented the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

2. COLLISION (§ 58*)—CARE REQUIRED OF TUG WITH LONG TOW.

A tug with a very long tow is held to a high degree of care, to avoid danger of collision with other vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 68–71; Dec. Dig. § 58.*]

3. COLLISION (§ 61*)—STEAM VESSELS WITH TOWS MEETING—FAILURE TO ALLOW ROOM FOR PASSING.

The steamship Williamsport, while passing northward through Pollock Rip Slue, off the Massachusetts coast, at night with a barge in tow, both loaded with coal, came into collision with the second of three light barges

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

in tow of the tug Plymouth, coming south. The Williamsport had just passed another meeting tow starboard to starboard, and as she approached the Plymouth was as far as she could safely go to the west side of the channel, while the Plymouth was further eastward, and they passed starboard to starboard without signals; but the Plymouth's tow, which was more than half a mile long, was carried by the tide to the westward, causing the collision. *Held* that, conceding the Williamsport to have been on the wrong side of the channel, such fact was not a proximate cause of the collision, which was due solely to the fault of the Plymouth in failing to allow sufficient room, which she might readily have done.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 78; Dec. Dig. § 61.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Cross-libels in admiralty for collision against the steam tug Plymouth, the Central Railroad of New Jersey, claimant, and against the steamship Williamsport, the Philadelphia & Reading Railway Company, claimant. Decree against the Plymouth, and her claimant appeals. Affirmed.

See, also, 167 Fed. 184.

John F. Lewis, James J. Macklin, and Francis C. Adler, for appellant.

James F. Campbell, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

LANNING, Circuit Judge. By the decree of the District Court the Plymouth was held liable for the collision, in the Pollock Rip Slue, between the steamship Williamsport, and one of the three barges which the Plymouth had in tow. "The Slue," said Judge Putnam, in The H. F. Dimock, 77 Fed. 226, 23 C. C. A. 123, "is a well-known thoroughfare on the coast of Massachusetts, so much used that very few on our shores are more thronged. It is a dangerous and difficult channel to navigate, because of the swift tide, the direction of which is constantly changing, and of dangerous shoals on either hand." The Williamsport, with the barge Paxinos in tow, both loaded with coal, was passing easterly from Shovelful Lightship to Pollock Rip Lightship, which is at the southern end, and just west of the middle of the channel, of the Slue. The tug Piedmont, with three barges in tow, all empty, was passing southerly through the Slue, as was the Plymouth, also with three barges in tow, all empty. The tide was from the northeast to the southwest, the speed of the Williamsport, against the tide, perhaps 2½ knots an hour over the bottom, and that of the Plymouth, with the tide, about 7½ knots an hour over the bottom. The Piedmont and her tow were somewhat further east in the Slue than were the Plymouth and her tow, and the last barge in the Piedmont's tow was perhaps a quarter of a mile in advance of the Plymouth. The time was shortly after midnight. It was a dark night, but lights were clearly seen.

The Williamsport turned northerly into the Slue before reaching the Pollock Rip Lightship, thereby passing into the westerly or her port side of the Slue. She and the Piedmont were then about head and head; the Piedmont displaying to her both of her side lights. The Piedmont thereupon gave the Williamsport a signal of two blasts of her whistle, to which the Williamsport responded with two blasts. Each vessel then starboarded its helm, and the Piedmont passed outside of the Pollock Rip Lightship before turning westerly toward Shovelful Lightship, while the Williamsport, with both of the side lights of the approaching Plymouth in view, passed over to the extreme westerly side of the Slue and steadied herself there in a position where she and the Plymouth were green light to green light, or starboard to starboard. Less than a mile north of the Pollock Rip Lightship, where the width of the Slue was about three-fourths of a mile, the Williamsport passed the Plymouth and the first of her three barges starboard to starboard. She collided with the second of the barges, and soon after sank.

The Plymouth insists that the narrow channel rule is applicable to the Slue, and that the collision was due, first, to the fact that the Williamsport was on the wrong side, and, second, to the fact that, after the Williamsport had safely passed the Plymouth and her first barge, the Williamsport sheered to the east and struck the second barge. The Williamsport, on the other hand, contends that no signals were passed between her and the Plymouth, that the Plymouth therefore impliedly accepted the position of green to green, that the tide was running strongly from northeast to southwest, that the Plymouth's tow, more than a half mile long, was carried out of alignment by the tide, that the Williamsport was as near the westerly edge of the Slue as it was prudent for her to be, and that the collision was solely due to the fact that the Plymouth negligently failed to starboard her helm and pass further over toward the middle of the Slue, which, as above stated, at that part of it was three-fourths of a mile wide. The District Court adopted the contention of the Williamsport.

[1] We do not think the District Court erred. It may be assumed, for the purposes of this case, that the Williamsport should have observed the narrow channel rule, and made her turn into the Slue outside of the Pollock Rip Lightship, and passed northerly on the easterly side of the Piedmont and the Plymouth. But, though she did not do so, the Plymouth could not with impunity recklessly endanger the safety of the Williamsport. The old common-law rule that a plaintiff cannot recover damages for the negligence of the defendant, where, by exercising ordinary care, the plaintiff could have avoided the consequences of the defendant's negligence, has now been materially qualified. In Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, the following instruction to the jury was approved:

"There is another qualification of this rule of negligence, which it is proper I should mention. Although the rule is that, even if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident, yet the contributory

negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence."

To the same effect are Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 429, 12 Sup. Ct. 679, 36 L. Ed. 485; Turnbull v. New Orleans & C. R. Co., 120 Fed. 783, 57 C. C. A. 151; Herr v. St. Louis & S. F. R. Co., 174 Fed. 938, 98 C. C. A. 550.

In Klutt v. Phila. & R. Ry. Co., 142 Fed. 394, 73 C. C. A. 494, where Klutt was rowing across the Delaware river, and was run down by the defendant's tug, this court said:

"But, even, upon the assumption that Klutt was guilty of negligence in crossing in front of the approaching tug and tow, it does not follow that the defendant is exempt from liability to the plaintiff. It is a settled principle of law that although a plaintiff, who sues for an injury inflicted by the defendant, might by the observance of proper care have avoided exposing himself to the injury, yet this will not prevent him recovering damages from the defendant if the latter discovered, or by the exercise of ordinary care might have discovered, the exposed situation of the plaintiff in time, by the exercise of ordinary care and diligence, to have averted the effect of the plaintiff's negligence and avoided the injury which happened."

But we do not base our decision on the supposition of contributory negligence of the Williamsport. Contributory negligence of a plaintiff, like the negligence of a defendant, must have a proximate and not a remote, a direct and not an indirect, relation to the injury complained of. In the case before us, no signals passed between the Williamsport and the Plymouth. The Williamsport had passed to the extreme westerly side of the Slue and taken a position toward the Plymouth of green to green. The Plymouth, as her own officers testify, as well as the Williamsport, considered the position a safe one. They expected to pass starboard to starboard. There was no misunderstanding between them at any time. The absence of danger or any other signals between them, and the testimony of the men on both vessels, is conclusive proof on that point.

[2] The Plymouth had a long tow of three barges, each with a hawser 1,000 feet or more in length. Her tow was certainly more than a half mile long; and Capt. Hand, of the Plymouth, himself says it was nearly a mile long. The Williamsport knew, by the three white lights of the Plymouth (article 3 of Inland Rules), that the latter's tow was more than 600 feet in length; but she could not know its actual length. It was therefore the duty of the crew of the Plymouth to navigate that vessel, especially in such a place as the Slue, with extreme care. The Gladiator, 79 Fed. 445, 25 C. C. A. 32; The Mount Hope, 84 Fed. 910, 29 C. C. A. 365; The Samuel Dillaway, 98 Fed. 138, 38 C. C. A. 675; The Gertrude, 118 Fed. 130, 55 C. C. A. 80. These cases were all decided by the Circuit Court of Appeals of the First Circuit, and that court has consistently enforced the rule that tugs with long and hazardous tows shall be held to a very high degree of care. The Circuit Court of Appeals of the Second Circuit enforces the same rule. The Bee, 138 Fed. 304, 70 C. C. A. 593. It is a salutary rule. Commerce and a due regard for human lives demand its observance.

[3] Assuming that the narrow channel rule is applicable to the Slue, the violation of it, in the circumstances above given, was not the proximate cause of the collision. That cause was either the sheering of the Williamsport to her starboard after passing the Plymouth and her first barge, or the sheering of the Plymouth's second barge to her starboard by reason of the tide or bad navigation, or both. We incline, with the District Court, to the latter view. The testimony on the point is conflicting. But the learned District Judge very satisfactorily summed up the facts in the following language:

"The Plymouth's theory is that the Williamsport suddenly sheered to starboard after passing the first barge, and that this sheer was the sole cause of the disaster. To my mind the theory is not credible. It requires the court to believe that a heavily loaded vessel, towing a heavily loaded barge, and moving slowly against the tide, would suddenly sheer a considerable distance while moving less than 1,000 feet. I say while moving less than 1,000 feet, because, of course, the Plymouth's barges were also moving to meet her with comparative rapidity, and the second barge must therefore have inflicted the blow before the Williamsport had gone more than 500 or 600 feet at the most beyond the point where she passed barge No. 10 (the first barge). It seems to me much easier to believe, and it accords quite as well with the testimony, that an empty barge, going at a higher speed and acted upon by a westerly tide, should inevitably tend still further in that direction, and might easily get out of line in the darkness without her deviation being accurately observed. This, of itself, would account for the collision. If she sheered, also, the explanation is even more satisfactory. I think, therefore, that the Plymouth was solely at fault, because she failed to give the Williamsport sufficient room to execute the maneuver of passing starboard to starboard, to which the Plymouth herself agreed. There is no doubt in my mind that there was plenty of space and depth for the Plymouth to have gone sufficiently to the eastward to have allowed the Williamsport to pass with safety; and the fact that she did not do so is, I think, to be attributed to a disinclination to take the necessary trouble, and to a willingness that the Williamsport should encounter the risk of the shoal. I do not mean that she deliberately and willfully crowded the Williamsport to the point where the collision occurred; but I do mean that, as she had ample notice that the tows were to pass starboard to starboard, and as she could easily have given more room to the approaching vessel to execute the maneuver in safety, she was at fault for not doing her part to afford the proper margin. She was bound to take account of the facts that her barges were light, and that the tide was setting strongly to the westward. These reasons only made it more imperative that she should do all that lay in her power to diminish the risk to which the Williamsport was undoubtedly exposed, even under the most favorable circumstances. To say the least, the Plymouth was negligent, and it may also be that she only made way grudgingly, instead of co-operating willingly toward the success of the maneuver to which she was herself committed."

Our judgment is that the decree of the District Court should be affirmed, with costs.